UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


------------------------------X
                              :
UNITED STATES OF AMERICA,     :
et al.,                       :      16-CV-2458 (ENV)(LB)
              Plaintiff,      :
                              :      October 16, 2019
                              :
           V.                 :      Brooklyn, New York
                              :
AMERISOURCE BERGEN CORP.,     :
et al.,                       :
              Defendant.      :
------------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          CHRISTINA DELISE, ESQ.
                            SAM BOYD, ESQ.
                            DEBORAH ZWANY, ESQ.
                            ELIZABETH SILVERMAN, ESQ.


For the Defendant:          MATTHEW HOGAN, ESQ.


Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1              THE CLERK:  Civil cause for pre-motion

2    conference, docket number 16-CV-2458, United States of

3    America, et al. v. AmeriSource Bergen Corporation, et

4    al.

5              Will the parties please state your names for

6    the record.

7              MS. DELISE:  Christina Delise from the

8    Lanier Law Firm for the relator.

9              MR. BOYD:  Sam Boyd from Boyd & Associates

10   for the relator.

11             MR. HOGAN:  Good afternoon, your Honor.

12   Matthew Hogan from Morgan Lewis & Bockius for

13   AmeriSource Bergen Corporation, AmeriSource Bergen

14   Specialty Group, and US Bioservices.

15             MS. ZWANY:  Deborah Zwany for the United

16   States.

17             MS. SILVERMAN:  Elizabeth Silverman for the

18   State of New York and the named plaintiff states.

19             THE CLERK:  The Honorable Lois Bloom

20   presiding.

21             THE COURT:  Good afternoon, Mr. Boyd, Ms.

22   Delise, Mr. Hogan, Ms. Zwany, and Ms. --

23             MS. SILVERMAN:  Silverman.

24             THE COURT:  Ms. Silverman and Ms. Zwany, you

25   didn't sign on to the conference sheet so I'll have it

1    passed to you after we're done here.

2              MS. SILVERMAN:   Thank you.

3              THE COURT:   This is a pre-motion conference

4    in plaintiffs' False Claims Act case, alleging that

5    defendants defrauded the government regarding Medicare,

6    Medicaid, Medicare Part D.  And on August 28th, 2019,

7    plaintiff relator filed a pre-motion conference

8    request, seeking leave to file a motion to transfer

9    this matter to the U.S. District Court for the Eastern

10   District of Texas.  That's ECF-35.  Plaintiff United

11   States of America and defendants have since responded,

12   and those are ECF numbers 36 and 37.  Judge Vitaliano

13   referred the request for the pre-motion conference and

14   any subsequently motions or rulings arising from the

15   conference to me, and I set today's conference to

16   address these requests.

17              In the letter that was sent to my attention,

18   which is ECF document 41, it does say in the first

19   paragraph that relator respectfully requests leave to

20   file her proposed motion to transfer, supporting

21   declaration, and exhibits in advance of or at the pre-

22   motion conference.  In the interests of efficiency and

23   expediting the Court's decision, I'm granting leave to

24   file the motion.  Then it says, "or deeming it filed

25   and granting the requested transfer."

1              So my real question, Mr. Boyd and Ms.

2    Delise, is why do I need more?  I think the arguments

3    have been pretty well set forth in the papers.  Why do

4    I need more?  Is there something that I am not seeing

5    that I need to see in order to make a determination?

6              MS. DELISE:  Well, your Honor, although the

7    papers do adequately represent plaintiffs' position,

8    it's important to -- we'd like to further explore them

9    and illuminate just why we request this transfer.

10             THE COURT:  You have this opportunity.

11             MS. DELISE:  Absolutely, your Honor.  May I

12   explain them?

13             THE COURT:  Please.

14             MS. DELISE:  Thank you.  Your Honor, we are

15   respectfully requesting transfer to the Eastern

16   District --

17             THE COURT:  Don't go back to the beginning

18   of what your papers say.

19             MS. DELISE:  Understood.

20             THE COURT:  I'm asking you to tell me what

21   it is that, if I gave you more time to put in more

22   papers, I would have that's different than what I

23   already have.

24             MS. DELISE:  Your Honor, it would allow us

25   the opportunity to expand upon -- to expand upon the

1    Court's -- the court's ruling in <u>Fisher</u>.  It's a case

2    where --

3              THE COURT:  I read the court's ruling and I

4    agree with Judge Cott, who is my colleague in the

5    Southern, and this is the same Mr. Boyd who was in that

6    case, and it's the same sort of scenario that the case

7    was pending for a while, the Southern District did not

8    pick it up, and that was when the transfer request

9    came.  So what do you want to tell me about <u>Fisher</u>?

10             MS. DELISE:  I'd like to just distinguish

11   the case at hand from <u>Fisher</u>, your Honor.  First off,

12   in that case, there was extensive motion practice.

13   There were two amended complaints.  Here, we've only

14   filed a complaint and it was filed --

15             THE COURT:  Why should that make a

16   difference to me?  My real point about why I think the

17   <u>Fisher</u> case, which neither side made as much of a big

18   deal as I would have if I was -- if I was the one

19   trying to convince the judge.  I'm looking at <u>Fisher</u>,

20   at page 628.  So it's 204 F.Supp.3d, and I'm looking at

21   628, which is about ten pages in.

22             In this case, Judge Cott says, "The Court

23   concludes that it would be an unwise precedent to allow

24   a relator to file a suit in one district, wait to see

25   whether the government intervened, and then if it did

1   not, seek an immediate transfer to another court.  Some

2   would fairly category such maneuvers as forum shopping,

3   which cannot be countenanced."

4           That seems to be very similar to what

5   happened here.  Nothing has changed, except that Mr.

6   Boyd is now in on the case.  And then I'm further

7   confused, I'll be honest with you, because, Ms. Delise,

8   you're in New York.  So if you're putting it back to an

9   attorney in New York to say really, we're not just

10  doing it for the convenience of Mr. Boyd, I'm not

11  convinced.

12          Two, I will say that district courts, as

13  noted in the opinion by Judge Cott, had broad

14  discretion in making these determinations.  And again,

15  I'm not saying that I am requiring a change in

16  circumstance.  My real bottom line here is that the

17  defendants are against it, the United States, who

18  conducted a lengthy investigation into this matter, is

19  against it.  Plaintiff had the option -- in fact, there

20  was a prior case filed in the Eastern District of Texas

21  by this very same plaintiff relator.  So clearly, this

22  person knew at the time they were filing in the Eastern

23  District that they could have filed both cases in the

24  Eastern District of Texas.

25          So again, I'm not asking you to repeat the

1  arguments that have already been made.  What is it that

2  I am not getting?

3          MS. DELISE:  Understood, your Honor.  I'd

4  like to just clarify that at the initial time of the

5  filing of this case in 2016, none of relator's current

6  counsel was counsel of record.  We had no say in the

7  decision of --

8          THE COURT:  What difference does that make?

9  That's not part of the interests of justice under 1404.

10          MS. DELISE:  Under 1404, something

11  incredibly important to consider that this Court has

12  held time and time again is the most critical factor,

13  the convenience of witnesses.  We plan to call 34

14  witnesses, 29 of whom reside in the Eastern District of

15  Texas.

16          THE COURT:  Except we don't know that the

17  case will ever get that far.

18          MS. DELISE:  While that is true, we will

19  still need to --

20          THE COURT:  I'm not against the plaintiff

21  having their day in court.  Please do not get me wrong.

22  What I am not for is that a plaintiff picks where to

23  bring a qui tam action, which requires the United

24  States government to do an investigation, and that

25  investigation was done here because plaintiff filed the

1    case here.

2            The defendants are saying they don't really

3    care if they have to fly people in, and you're saying I

4    should not listen to them, that I should be more

5    worried about the witnesses.  They're saying they don't

6    care if they have to fly people in.

7            Isn't that correct, Mr. Hogan?

8            MR. HOGAN:  That is correct, your Honor.

9            THE COURT:  I'm really concerned about the

10   use of the resources of a United States Attorney's

11   office to do an investigation, whether or not they end

12   up signing on to the case -- they did not in this case

13   and they did not in the Fisher case.  I think that that

14   investigation and whatever went into it seals the fate

15   in a certain way of the plaintiff relator.  They chose

16   where to bring the case, the investigation was done

17   here.  If it wasn't a three-year investigation, perhaps

18   I would feel differently.  But here, the case was

19   sealed from its filing on May 13th, 2016 until the Court

20   ordered it unsealed on April 2nd of 2019.  So the

21   investigation was quite lengthy.

22           MS. DELISE:  Respectfully, your Honor, if I

23   may make two points.

24           THE COURT:  Sure.

25           MS. DELISE:  First, the attorney -- the

1  office of the Attorney General has the opportunity to

2  monitor this case electronically.

3          THE COURT:  I saw that in your papers.  This

4  is not the Attorney General.  That's the State.  The

5  U.S. Attorney's Office was who investigated it in the

6  Eastern District of New York.  That there are many

7  different states and all except I think Colorado --

8          MS. DELISE:  Correct.

9          THE COURT:  -- oppose the request to send it

10  to Texas.  So what else do you want to elaborate on

11  that is not in the papers?

12          MS. DELISE:  The only other point, your

13  Honor, that I'd like to make is that pursuant to the

14  Thompson case, which is a Southern District case, the

15  court held that where a plaintiff selects the wrong

16  forum in the first instance, he or she has the

17  opportunity to correct that mistake.

18          THE COURT:  But this isn't a wrong forum.

19  Forum non convenience is not a wrong forum.  Again, if

20  you were being booted out -- in fact, Judge Cott did

21  say if you're really intending to bring this in Texas,

22  you can voluntarily discontinue the case here and you

23  can refile it in the Eastern District of Texas.  I read

24  that in his opinion.  You must have considered that in

25  this case.  That's an option to you.  I have no idea

1   what the time frame is or whether that would be

2   problematic.  She was already gone from AmeriSource

3   Bergen Corporation when she decided to file this

4   action, so it doesn't have bearing on -- you know, if

5   it was a discrimination case and you had X amount of

6   time to pursue it.  So I'm not really sure whether that

7   was something that had been considered or not.

8           MS. DELISE:  Your Honor, it is something

9   that we are still considering, depending on how the

10  Court rules on our motion to transfer.

11          THE COURT:  Thank you.

12          MS. DELISE:  Thank you.

13          THE COURT:  Mr. Boyd, you came a long way so

14  I want to give you a chance to speak, too, sir.

15          MR. BOYD:  May it please the Court.

16          THE COURT:  Thank you.

17          MR. BOYD:  There's a big difference here.

18  We're trying to take the case back where the witnesses

19  are, and it is our habit to file cases where you can

20  have live testimony at trial.  I don't have many of my

21  cases dismissed.  I've been doing it for over twenty

22  years now, just this kind of case.  What I'm saying is

23  the live witness is everything at trial.  A video trial

24  is not a trial for something as important as this, and

25  this is not --

1           THE COURT:  But if there was going to be a

2    trial --

3           MR. BOYD:  Yes.

4           THE COURT:  -- and if AmeriSource is saying

5    they will fly people in for the trial, why is that a

6    problem for you?

7           MR. BOYD:  They will fly in who they want to

8    fly in.

9           THE COURT:  No.

10          MR. BOYD:  They're going to fly in everybody

11   I want to fly in?

12          THE COURT:  You're making a record now.

13          MR. BOYD:  Yes.

14          THE COURT:  And they're saying that it's not

15   for the witnesses' convenience, right, Mr. Hogan?

16          MR. HOGAN:  Yes, that's correct, your Honor.

17          MR. BOYD:  And I -- sorry.

18          THE COURT:  That you're asking for this

19   transfer for your own convenience, not for the

20   witnesses'.

21          MR. BOYD:  Your Honor, respectfully, I'm an

22   old man.

23          THE COURT:  Yep.

24          MR. BOYD:  I stand before you with nothing

25   to gain by giving you my candor.  I travel everywhere.

1    It doesn't matter where I go but it does matter,

2    because of the science of jury trials, that the jurors

3    watch the witness, judge the credibility of the

4    witness --

5         THE COURT:  I get all that but we're a long

6    way from that.  You just served the pleadings.  This is

7    my whole though, okay?  I read the Judge Cott decision

8    and I said, this is exactly what happened in that case.

9    He waited until the Southern District had completed the

10   investigation, the Southern District declined to

11   intervene, and then Mr. Boyd swoops in and says it

12   should go to the Eastern District of Texas.  Well, you

13   know, fool you once, fool you twice, okay, and this is

14   a similar situation.  I don't know that you were

15   counsel.  I do know that she had another case filed in

16   the Eastern District of Texas at the same time.

17        MR. BOYD:  I wasn't counsel there.

18        THE COURT:  But if she didn't get to you in

19   the first go-around, again, maybe these clients have to

20   get a bigger billboard or something to get to you in

21   the first instance, and then you can file it in the

22   home court advantage.

23        MR. BOYD:  Facts matter.  I met (ui) at a

24   (ui) organizational annual conference before I brought

25   anything here to New York.  He asked me to bring my

1  cases here.

2            THE COURT:  Who are we talking about?

3            MR. BOYD:  He was the chief or assistant of

4  the fraud desk in the Southern District of New York.

5  He made a presentation --

6            THE COURT:  That's in the Fisher case,

7  you're talking about.

8            MR. BOYD:  All the Fisher cases.

9            THE COURT:  Okay, but we're in this Patsy

10  Gallian case.

11            MR. BOYD:  But you were remarking on how I

12  didn't like it so I wanted to move it.  He asked me to

13  come to New York.  He said, we have the people and we

14  have the money.  I had no intention of filing anything

15  in New York.  I've never --

16            THE COURT:  But you did.

17            MR. BOYD:  Well, he asked me to bring them

18  here.

19            THE COURT:  But that was a choice and as you

20  said, you're a grown person.

21            MR. BOYD:  Not just that.  It wasn't his

22  choice to not intervene.  He's a conduit.

23            THE COURT:  Again, that may be -- that may

24  be the same thing that Ms. Zwany is going to tell me,

25  but I'm making the point to you that you know already

```
1    that decisions have consequences and the decision to

2    bring it in New York, where there was three years of

3    investigation in the Eastern District, so I'm not

4    talking about whoever that guy was at whatever cocktail

5    hour that asked you to bring it in the Southern.  I

6    don't know if you have the same sort of story about

7    somebody in the Eastern --

8                 MR. BOYD:  No.

9                 THE COURT:  -- asking you to bring it here.

10                MR. BOYD:  No, ma'am.

11                THE COURT:  So I don't know who that is, Mr.

12   Boyd, but I'm being very plain with you.

13                MR. BOYD:  Okay.

14                THE COURT:  I don't want to encourage people

15   to file things in the Eastern District of New York

16   frivolously.  Plaintiffs' choice of forum is given

17   respect and, again, there are plenty of entities that

18   operate globally that are in New York.  There are

19   plenty of entities I'm sure in Texas that operate

20   globally.  I can see what your concerns are about

21   having live testimony, but again, at this point in the

22   proceedings, where we don't know what's going to happen

23   in this case -- I'm sure that there's going to be a

24   little time in the interim because they just got

25   served.  I can't speak to all of your concerns.  My
```

```
1   true concern is that the resources of this District not

2   be misused.  And even thought I'm not making any

3   finding that they were misused, I don't think that the

4   same notions of convenience and fairness are exactly

5   the same now as when the case was filed, because there

6   has been a three-year investigation by the Eastern

7   District U.S. Attorney's Office.  And had they signed

8   on, there would be no motion to transfer, of course.

9           MR. BOYD:  Right.

10          THE COURT:  So, again, the statute gives

11  this procedure and sometimes it's a little lengthier

12  than the plaintiff relator would want it to be, but

13  again, I don't want that work that was put in, that

14  investigation -- and the whole argument that they're

15  going to monitor it, that's different.  They had, I'm

16  sorry to say, boots on the ground here.

17          MS. DELISE:  Understood.

18          MR. BOYD:  Your Honor, a few more facts if I

19  may.

20          THE COURT:  Certainly.

21          MR. BOYD:  Okay.  First of all, I have no

22  reason to doubt whatever investigation Ms. Zwany made

23  but that's not before the Court.  The Court doesn't

24  have any evidence on it, number one.

25          Number two, none of that is wasted.  The
```

1   government looked at it, the government for its own

2   reasons -- and this Court knows, the courts of this

3   country have said that the fact that they don't

4   intervene is not a comment one way or the other, but

5   she's decided not to be an active party in the case.

6   Nothing is wasted.  Whatever work has been done, she

7   did in cooperation with Sanjay Gambani (ph) from the

8   Department of Justice in Washington D.C., and I've

9   worked with him before.

10          THE COURT:  Well, again, these are facts

11  that are not before me.

12          MR. BOYD:  Right.

13          THE COURT:  I'm only going by the letter.

14  I'll hear from Ms. Zwany as to her position if you want

15  me to.  But, again, my thought is that since it's

16  really plaintiff who gets to pick the forum, and the

17  only change that I really see is that you're now the

18  lawyer on the case, that that is not a reason that this

19  Court should transfer this case to another District.

20  And believe me, Mr. Boyd, we'll be as welcoming to you

21  here as your court in Texas is.

22          MS. DELISE:  I don't doubt that.  I see

23  really good results coming out of New York courts.  I

24  have no problem with that, but I do have experience in

25  the trial courts and I can tell you when witnesses can

1  make a thirty-minute drive, it's a lot different than

2  flying all the way to New York, finding a place that

3  somebody --

4           THE COURT:  I bet that's true, but if they

5  get a trip paid for by AmeriSource --

6           MR. BOYD:  Okay.

7           THE COURT:  -- and it's around Christmastime

8  and they get to do a little Christmas shopping and

9  Radio City Music Hall, they might be pleased as punch.

10           MR. BOYD:  I'm sure there might be some of

11  those witnesses, your Honor, but truthfully speaking,

12  all of these people have families.  So it's not --

13           THE COURT:  I'm not doubting -- look, my

14  huge concern here was exactly what I read into the

15  record that Judge Cott said, that we should not be

16  encouraging people who, once they trade in their

17  lawyer, then make this kind of application to the

18  Court.  And again, Judge Cott said, the court finds

19  that the government's decision not to intervene in this

20  qui tam action cannot amount to changed circumstances

21  warranting transfer to the Eastern District of Texas.

22  And then he wrote, convenience of counsel is not an

23  appropriate factor and he cites to case law from this

24  Circuit, not from other circuits, because you started

25  citing to me Texas cases.  God bless you and the Firth

1   Circuit but we are not there, okay?

2          MR. BOYD:  Yes, that is true for sure.

3          THE COURT:  And then that last paragraph,

4   where the court concludes that it would be an unwise

5   precedent to allow a relator to file suit in one

6   district, wait to see whether the government

7   intervened, and then if it did not, seek an immediate

8   transfer.  Now, your transfer is a little bit less than

9   immediate, it's like three months later.  I think the

10  case file was reopened in April and I don't remember

11  when you were served.  May, June, July, so it's a

12  little bit more than three months from the time that

13  the case was unsealed.  And again, getting this case on

14  track is what my job would be, other than this motion

15  that was referred to me.

16          Do you have any reason to believe, Mr. Boyd,

17  that I need to get extra papers on this?

18          MR. BOYD:  I think you have everything, if

19  you've got the exhibit that shows the list of witnesses

20  and all.  But, your Honor, I wish that you'd write

21  something that says, it's bad precedent if this is the

22  only reason, if counsel is trying to move a case just

23  for convenience of counsel.  That is not the case here.

24  I've practiced all over this country.  I'm used to

25  that, I understand that.

1          But you have got a huge cubby of quail being

2    witnesses down in the Eastern District of Texas.

3    That's where everything happened.  Ms. Zwany could have

4    not interviewed all of -- I'm sure she had to go to the

5    Eastern District of Texas if she interrogated or

6    interviewed the people who were involved in the

7    transactions.

8          THE COURT:  But that hasn't changed since

9    the case was filed, Mr. Boyd.  The case was filed here

10   --

11         MR. BOYD:  Yes.

12         THE COURT:  -- for whatever reason the

13   plaintiff and the plaintiff's lawyer chose to file it

14   here.  That the witnesses are there is not something

15   that has changed since the case was filed in this

16   District.

17         MR. BOYD:  I feel -- I feel that the

18   decision of the initial counsel is being used to punish

19   a client.

20         THE COURT:  Not at all.

21         MR. BOYD:  Clients do not understand this.

22         THE COURT:  Not at all.  What I'm saying is,

23   there were two cases filed in the Eastern District of

24   Texas by this plaintiff.  One is still there, from what

25   the papers say.

1          Is that correct, Mr. Hogan?

2          MR. HOGAN:  No, your Honor.  There was one

3   case that was filed in the Eastern District of New York

4   and another case that was in -- I'm sorry, the Eastern

5   District of Texas and another one in the Northern

6   District of Texas.  My understanding is that the one

7   has been resolved.

8          THE COURT:  In which court?

9          MR. HOGAN:  In the Eastern District of

10  Texas, I believe that one has been resolved through

11  settlement.  That was a case against Devita (ph).  And

12  then I believe that Mr. Boyd had another case that was

13  in the Eastern District of Texas.

14         THE COURT:  Well, you said Northern District

15  and Eastern District of Texas.  So there were two cases

16  by Ms. Gallian that were filed in Texas?

17         MR. BOYD:  Could you read those out, please?

18         MR. HOGAN:  That's my understanding, your

19  Honor, is that there was one that was filed in I

20  believe the Northern District of Texas, which was

21  against Devita, and --

22         THE COURT:  So it's Gallian v. Devita RX,

23  LLC.  This is listed on page one of ECF-36, and it says

24  that it was 16943-B, filed in the Northern District of

25  Texas on April 5th, 2016, and that was an unrelated qui

tam complaint.

MR. HOGAN:  That's correct, and that was against Devita, your Honor, and I believe that that case has since been resolved through settlement.

THE COURT:  Was there another case?

MR. HOGAN:  I believe that there is another case.  If I'm correct on this and my research is correct, I believe that there's a case that's in the Eastern District of Texas that has since been dismissed, your Honor.

MR. BOYD:  What's the (ui)?

MR. HOGAN:  I don't have that in front of me right now.

THE COURT:  And that you believe was filed by Ms. Gallian, too?

MR. HOGAN:  I believe so.

THE COURT:  That is not in your letter, so I don't want counsel for plaintiff to feel that I was relying on that when I was reading through the materials.  I saw that there was an unrelated qui tam complaint in the U.S. District Court for the Northern District of Texas, which was filed on April 5th, 2016, more than a month before filing the instant complaint.

MR. BOYD:  And that was to consolidate with the main case against Devita.  She did not have the

1  main claims and she was requested to file it and

2  consolidate the settlement with the big case on Devita.

3           THE COURT:  All I'm trying to say is, at the

4  time that she's making these decisions, these decisions

5  have consequences.

6           MR. BOYD:  Okay.

7           THE COURT:  And I don't know what propelled

8  her or her attorney, how she even got to an attorney in

9  New York, to pick the Eastern District of New York.

10  But I can say having picked us, how lucky she is that

11  she will get to litigate her case before us.  I will

12  let you speak again but I do want to let the government

13  speak.

14           MR. BOYD:  Thank you.

15           THE COURT:  Thank you.

16           Ms. Zwany?

17           THE COURT:  Could you just pull the mic

18  closer so that we could make sure --

19           MS. ZWANY:  Certainly, sorry.

20           THE COURT:  -- that we get your --

21           MS. ZWANY:  Okay.  The main point that I

22  wanted to make actually your Honor made, which is that

23  this case was brought here, it was brought here by

24  counsel.  The witnesses have not changed.  Nothing has

25  changed, except two things:  We declined the case.  The

1   United States declined to intervene, and new counsel

2   was brought in.

3          The concern of the United States Attorney's

4   Office and the United States in opposing the transfer

5   is very much a resource issue.  I understand the

6   concept of monitoring but in fact, if this case were

7   transferred to the Eastern District of Texas, an

8   Assistant U.S. Attorney there would be assigned to the

9   case and would need to learn the case.  Yes, I would

10  share my knowledge with that person, but it means

11  reinventing the wheel for what I believe is wasteful,

12  where plaintiff chose this forum.  Plaintiff did have

13  the opportunity to choose the Eastern District of

14  Texas.  The witnesses are the same.  That was the

15  decision that she made with her counsel.

16          We've met with her.  We've explained our

17  decisions to her and she made her choice.  So at this

18  point, frankly -- I know in the Southern District

19  actually either no position was taken or there was no

20  opposition to the motion.  I thought about that because

21  it would be frankly easier for me, but I do feel a

22  responsibility to my fellow AUSA's and feel that it is

23  wrong to thrust a case that we've already done all the

24  work on to another district.

25          THE COURT:  And, Ms. Silverman, do you want

1    to be heard?

2              MS. SILVERMAN:  Your Honor, the states

3    completely support the federal government's position.

4    We feel that it would be a drain on resources and we

5    don't encourage forum shopping, either, so we are in

6    agreement with the federal government.

7              THE COURT:  Can you tell me what involvement

8    the states have had up until this point because I'm

9    really not sure?

10             MS. SILVERMAN:  Very minimal.  I've spoken

11   with AUSA Zwany about their investigation and offered

12   support.  At this point, the states have had very

13   little involvement.

14             THE COURT:  And you're able to represent

15   every other state that's named, except for Colorado.

16             MS. SILVERMAN:  Correct.  Colorado takes no

17   position at this time.

18             THE COURT:  But you've had contact with all

19   the other states --

20             MS. SILVERMAN:  Yes.

21             THE COURT:  -- that are listed.

22             MS. SILVERMAN:  Correct, yes.

23             THE COURT:  Thank you.

24             Mr. Hogan, do you want to be heard?

25             MR. HOGAN:  Your Honor, we think that the

1   Court can make a decision on the papers that are before

2   it, but we also wanted to point out that while we don't

3   know what witnesses the relator has identified in her

4   papers, what we do know is that there are numerous

5   witnesses that will be throughout the country, the

6   third party payers who were involved that they're

7   making allegations were defrauded, the states that

8   they're claiming are defrauded.  Those are individuals

9   that will be witnesses and they all oppose this motion,

10  or at least the states oppose this motion, including

11  the State of Texas.  We think that's particularly

12  telling.  This District is a convenient District for a

13  lot of the states and will be a convenient District for

14  a lot of the payers, and we think that that matters.

15          THE COURT:  You want to be heard for your

16  rebuttal.

17          MR. BOYD:  May it please the Court.

18          THE COURT:  Yes.

19          MR. BOYD:  I want to entertain you, Judge.

20          THE COURT:  You are entertaining me.

21          MR. BOYD:  Okay.

22          THE COURT:  Good lawyers are always

23  entertaining.

24          MR. BOYD:  All right.  I'm not going to be

25  unhappy here.  The Court will -- the trial will be a

1  little more cumbersome and I'm glad they're willing to

2  pay for all of our witnesses to transport them up here,

3  but all the states did not -- you should not be under

4  the incorrect impression that all the states said oh,

5  yeah, we object, because we listed the states that when

6  we sent out a request of whether or not they objected

7  to the transfer, none of them objected.  We have the

8  emails.

9          THE COURT:  But they may have changed their

10 mind --

11         MR. BOYD:  Well, I know --

12         THE COURT:  -- just like your client is

13 trying to change their mind.

14         MR. BOYD:  I know they changed their mind

15 but it's not that they felt that way because when we

16 talked to some, they could care less whether this was

17 in Texas or New York.  So I just want to be, your

18 Honor, candid and make sure the record --

19         THE COURT:  I appreciate that, Mr. Boyd.

20 What about Mr. Hogan's proffer to the Court that the

21 witnesses are scattered across the country.

22         MR. BOYD:  Well, they're certainly not

23 scattered here.

24         THE COURT:  Meaning they're not in the

25 Eastern District.

```
1              MR.  BOYD:  Most of the witnesses are in
2    Texas.
3              THE COURT:  So why was the case in the
4    Eastern District?
5              MR.  BOYD:  You know what, your Honor?  I
6    didn't have anything to do with that decision and I got
7    to tell you that most False Claims Act relators don't
8    understand all of those issues, either.  They hire a
9    lawyer.  The lawyer has super power, super knowledge,
10   and they say, oh, we need to file this here in the
11   Eastern District of New York.  What would you do if
12   you're a middle-class person and you go to a lawyer and
13   the lawyer says that?  I'm being frank with you about
14   that.
15             THE COURT:  Do you know what my specialty
16   area in this Court is?  I was brought over from the
17   Southern District to deal with pro se litigation, so
18   you're talking to somebody who deals every day of the
19   week --
20             MR.  BOYD:  Yes, your Honor.
21             THE COURT:  -- with people without the
22   benefit of counsel, who are trying to get a fair shake
23   in the federal courts.
24             MR.  BOYD:  I know.
25             THE COURT:  So when you tell me that
```

```
1   somebody -- and I don't know Ms. Gallian from Adam --
2   that she found this law firm just online and that they
3   persuaded -- I have cases by Valli & Kane.  I'm not
4   buying that for a second, that she was just a hapless
5   -- talked into coming and filing this case and three
6   years later, when the government declines, all of a
7   sudden, Valli Kane is out and Mr. Boyd is in, and it's
8   gone down to Texas because you are not at all saying
9   you won't litigate the case here but you're saying for
10  the convenience of the witnesses and everyone else in
11  the matter.
12            MR. BOYD:  In there hereafter, in the
13  hereafter --
14            THE COURT:  Yes.
15            MR. BOYD:  -- I will be happy to sit with
16  you and have a cup of coffee and talk to you about
17  everything that's gone on.  My lips are sealed, not
18  because I want them sealed.  However, Ms. Gallian, if
19  explained the facts, would have filed where we want it
20  to be moved.
21            THE COURT:  I don't want to go to the
22  hereafter anytime soon, okay, so let me just say --
23            MR. BOYD:  Neither do I.
24            THE COURT:  Our coffee or whatever we're
25  going to have, I don't want to it to be anytime soon.
```

1          MR. BOYD:  Well, I put us both there.

2          THE COURT:  But I'm good at reading the tea

3    leaves or between the lines.

4          MR. BOYD:  Yes.

5          THE COURT:  So there's some antipathy or

6    unhappiness with the choices that the lawyers made.

7          MR. BOYD:  Probably.

8          THE COURT:  I get it.  And I could say that

9    she was probably very unhappy that she came up to New

10   York and dealt with the U.S. Attorney's Office -- and

11   again, in a qui tam action, if the U.S. Attorney's

12   Office takes it on, there is money in the bank.  I'm

13   sorry to say it that way but that's the truth.

14         MR. BOYD:  Well -- and I hesitate to say

15   this because Mr. Hogan is reputed to be one of the top

16   defense lawyers in the country, but if I get involved,

17   there's money in the bank for the government, too.

18         THE COURT:  Well, I'm glad for Ms. Gallian

19   that she found you.

20         MR. BOYD:  Yes, ma'am.  I am, too.

21         THE COURT:  But what I'm saying is I can

22   never make up for the choices.  You know, I could have

23   a bad lawyer in front of me, and I say this all the

24   time, and a pro se litigant will do much better than

25   having a bad lawyer because if they're earnest and I'm

1   here, I'm going to make sure that they don't get the

2   wrong information.

3               MR. BOYD:  Yes.

4               THE COURT:  But if they have a bad lawyer, I

5   can't do a whole lot about it.

6               MR. BOYD:  Right.

7               THE COURT:  Okay?

8               MR. BOYD:  Yes, and I don't want you -- I'm

9   totally respectful, I really am.  I'm not saying that

10  before I say --

11              THE COURT:  And I'm respectful to you and

12  I'm giving you all this time --

13              MR. BOYD:  You are.

14              THE COURT:  -- because I realize you --

15              MR. BOYD:  You are.

16              THE COURT:  You flew up here and you were

17  serious and you were prepared, and I, too, am serious

18  and prepared.

19              MR. BOYD:  I know that.

20              THE COURT:  And Judge Vitaliano gave me the

21  responsibility to rule on this.  So basically, what I'm

22  going to do, Mr. Boyd, is I'm going to deny your motion

23  to transfer based on our arguments today on the record,

24  and I'll get a copy of the transcript.  And then we

25  need to set the schedule to move things forward because

1   I know that's your intent, to start getting at the meat

2   of the matter here.

3          If the motion -- the pre-motion conference

4   has been held, so that's moot.  I do not need other

5   papers.  That was the first thing that I asked of the

6   parties.  They said everything has been presented.  And

7   I find based on primarily Judge Cott's decision in the

8   Fisher case, which was a 2016 Southern District of New

9   York case, the closest to the situation presented here,

10  I'm denying the motion to transfer.

11         I want to be clear on the record that Mr.

12  Hogan has said that the witnesses are scattered across

13  the country.  He has made a representation that if they

14  need to, they will fly people in.  That doesn't mean

15  that he's flying in every person you have on your list.

16  He did not say that, although I said that he has made a

17  representation that they would fly witnesses in.

18         Again, I am trying to get to the heart of

19  the matter, so where are we?  There has been no

20  responsive papers filed here, Mr. Hogan.

21         MR. HOGAN:  Yes, that's correct, your Honor.

22  There was a motion that we had filed to stay our time

23  to respond until Mr. Boyd made a decision about whether

24  or not he was going to continue with the complaint in

25  its current form or if he was going to amend it,

1  because he had made a representation that he intended

2  to amend the complaint.

3          MR. BOYD:  That's true.

4          THE COURT:  Well, now you get one-stop

5  shopping.

6          MR. BOYD:  Good.

7          THE COURT:  Because you get to present to me

8  what you would like to have.

9          MR. BOYD:  Even if you later change your

10 mind, I'd like to have you emigrate to Texas and come

11 to the Eastern District of Texas.  However --

12         THE COURT:  But not in the hereafter, okay?

13         MR. BOYD:  Not in the hereafter, okay.

14         THE COURT:  Okay.

15         MR. BOYD:  And I am confident that we will

16 get a fair hearing in this Court --

17         THE COURT:  Of course you will.

18         MR. BOYD:  -- for everything that you give

19 us.

20         THE COURT:  I don't know that you've seen

21 Judge Vitaliano but he is a breath of fresh air.

22         MR. BOYD:  Good.

23         THE COURT:  A good man.

24         MR. BOYD:  Good, so I'm not unhappy about

25 any of that.

1            THE COURT:  Good.

2            MR. BOYD:  It's just the other issues that

3    were of concern to me, so I'm no longer concerned

4    there.  We will make -- I will ask the Court to give us

5    seven days to file the amended pleading to consider --

6            THE COURT:  I could give you longer than

7    that, sir.  I want you to be able to do the job that

8    you want to do.

9            MR. BOYD:  We got the amended pleading

10   ready.

11           THE COURT:  That's fine.

12           MR. BOYD:  Yeah.

13           THE COURT:  They can't consent to it being

14   filed.

15           MR. BOYD:  That's right.

16           THE COURT:  But they don't have to at this

17   point because you haven't filed a responsive pleading.

18   I could give him permission to file.  Let's hear from

19   all sides because generally, what I do is, to obviate

20   motion practice --

21           MR. BOYD:  Yes.

22           THE COURT:  -- is I give them a chance to

23   review the proposed amendment.  And that way, if

24   they're not going to say that it's a futility, because

25   you might be trying to add claims that would be a

1  futility -- if they're not going to say it's a

2  futility, then you get to file it and they get to

3  either make their motion or -- so instead of opposing a

4  motion to amend, since the 12(b)(6) standard overlaps

5  with the Rule 15 standard --

6          MR. BOYD:  We've actually addressed this.

7          THE COURT:  Yes.

8          MR. BOYD:  There's an order --

9          THE COURT:  Yes.

10          MR. BOYD:  -- in the record and he's waiting

11  on -- we need to file the amended complaint under seal.

12  The DOJ let me know years ago and I've always filed

13  amended complaints under seal, so I can't give it to

14  him ahead of time.  He has an indication of what this

15  case is about so -- but he didn't have any duty to

16  respond until there's --

17          THE COURT:  What's the order that you're

18  pointing me to, where you say it's --

19          MR. BOYD:  It's a stipulation, I think,

20  wasn't it, Matt?

21          MR. HOGAN:  That's correct, and I think

22  there was an order entered on the docket approving the

23  stipulation, your Honor.

24          MR. BOYD:  So that takes a little more of

25  the Court's desk.

1          THE COURT:  I'm just looking -- there were

2    motions -- there was a motion for an extension of time

3    to file an answer, and there was an order granting

4    that.  So where is the stipulation?

5          MR. HOGAN:  In that order, your Honor.  I

6    believe it adopted the motion that indicated that we

7    would file our response --

8          MR. BOYD:  Sixty days, I think.

9          MR. HOGAN:  Yes, that's correct, sixty days

10   after an amended complaint was filed or --

11         MR. BOYD:  And unsealed.

12         MR. HOGAN:  -- upon Mr. Boyd's notice that

13   there was not going to be an amended complaint.

14         THE COURT:  So ECF-31 was your motion, and

15   it had an attachment, which was a proposed order.  And

16   you're saying that that proposed order was signed?  I

17   saw that the application 30, which was for pro hac

18   vice, was signed, and I see that 31 was granted, sixty

19   days after the amended complaint is unsealed.

20         MR. BOYD:  Yes, ma'am.

21         THE COURT:  What about the unsealing.  This

22   is --

23         MR. BOYD:  Well, the Court --

24         MS. ZWANY:  If I could speak to that, your

25   Honor.

1            THE COURT:  Yes, the government would speak

2      to it.

3            MS. ZWANY:  The relator has to provide us

4      with the complaint.  We will review the complaint and

5      make a new determination whether we seek to intervene

6      or decline, and that may or may not, depending -- I

7      haven't seen the contents -- take time.  We would

8      obviously review everything that we receive.  We also

9      have to --

10            THE COURT:  It can't take three years.

11            MS. ZWANY:  No, no, no, no, no.

12            MR. BOYD:  Thank you.

13            MS. ZWANY:  But it would -- but it would

14      also require us to get certain approvals in terms of

15      intervention or declination, so it will not be an

16      overnight --

17            THE COURT:  So give me a thumbnail sketch.

18      Let's assume that he gets the proposed amendment to you

19      -- you said a week?  Do you want to hedge your bet and

20      give a week and a half?

21            MR. BOYD:  Yes, ma'am, ten business days.

22      That would be great.

23            THE COURT:  Okay.  So we're currently at the

24      16th, and giving it the ten business days gets us to

25      October 30th.

1          MS. ZWANY:  We normally under the statute

2    have sixty days to determine intervention and can seek

3    extensions for good cause.  So what I would propose,

4    your Honor, is that we, at the sixty days, report to

5    the Court to see if for some reason we need an

6    extension or a decision has been made, because I will

7    need -- regardless of the content, I will need to seek

8    approvals for either decision.

9          THE COURT:  I hear you but I'm not going to

10   give you the full sixty days.  I'll give you until

11   December 16th because you've already gotten a three-year

12   head start and what I don't want to happen is -- we're

13   talking about the holidays.  Everybody says they can't

14   get anything done.  By the time the holidays end, we're

15   at the next year.  I just want a decision on this, so

16   12/16.  So October 30th, 12/16.  And if you're not able

17   by that date -- I need some sort of affidavit of how

18   long this is going to take.  I don't want it just to be

19   a continuing, I need to get approval through --

20         MS. ZWANY:  Understood, your Honor.  The

21   three years is not for approvals, of course.  That was

22   for an actual investigation.

23         THE COURT:  I get that but I don't -- I

24   don't intend to hold the plaintiff relator up in her

25   lawsuit.  The government had a chance, they turned it

1   down, that's fine.  We've had a motion.  We've now

2   disposed of the motion.  We have an amended pleading

3   that's going to be sent to you by October 30th.  By

4   12/16, you're going to tell the Court what you need.

5   If you need more time, I'm not just going to accept a

6   letter.  There needs to be something by somebody with

7   personal knowledge of how long the process is going to

8   take and what has happened.  Hopefully, by that date,

9   we'll get the answer.

10           Let's assume your answer is, we've gotten

11  everybody to approve, it can be unsealed, and we're

12  declining.  Let's assume that's what the answer is.

13           Then your stipulation, Mr. Boyd and Mr.

14  Hogan, will then give sixty days from that filing of

15  the government unsealing, right?

16           MR. BOYD:  Yes, ma'am.

17           THE COURT:  They say that you can now file

18  it publicly.  Is that how it works or they file it?

19           MR. BOYD:  I don't think so.  I think we

20  need to file it under seal but we can file it redacted

21  on the Court's docket.

22           THE COURT:  Why does it have to be under

23  seal?

24           MR. BOYD:  Because the government is

25  supposed to have time to investigate without the

```
 1   defendant knowing exactly what's in the pleading.
 2              THE COURT:  But if she's filing something
 3   saying they've completed their review of the amended
 4   pleading and their decision is to decline, then isn't
 5   that time for this to be publicly filed?
 6              MR. BOYD:  Yes.
 7              THE COURT:  Okay.
 8              MR. BOYD:  Yes.
 9              THE COURT:  So, Ms. Zwany --
10              MS. ZWANY:  Yes.
11              THE COURT:  On the 16th, you're going to file
12   a status letter or you're going to tell the plaintiff's
13   counsel that you've done your review and they may file
14   it publicly, not redacted, right?
15              MS. ZWANY:  We would at that point, assuming
16   that we declined, and we will give careful review
17   before making that decision, we would file a notice of
18   declination.  And at that point, we would ask the Court
19   to unseal the complaint, and then the Court could order
20   service in however much time the Court wanted to.
21              THE COURT:  But there's a stipulation
22   between them, so this is my concern:  I don't want this
23   to be lost on anybody.  If you decline, at that point
24   in time, Mr. Boyd has permission then to file, because
25   I won't have the amended complaint before that time.
```

1              MS. ZWANY:  It will be filed, your Honor.

2              THE COURT:  It will be filed under seal.

3              MS. ZWANY:  It will be filed under seal.

4              THE COURT:  By the October 30th date.

5              MS. ZWANY:  Correct.

6              THE COURT:  But nothing will happen until

7  the December 16th date, when you're going to tell us the

8  status, whether or not there is a notice of

9  declination.  If there is a notice of declination, I

10  want it to be worked out now.  You have bargained for

11  60 days to respond.

12              MR. HOGAN:  Yes, your Honor.  We actually --

13  in that stipulation, it's at least 60 days.  Given the

14  holiday, we may ask for 75 days, if that would be

15  appropriate for --

16              THE COURT:  I want you to speak to Mr. Boyd,

17  agree to a date.  And from the notice of declination, I

18  want there to be something on the docket saying exactly

19  by which date you're going to respond, because respond

20  doesn't necessarily mean answer.

21              MR. BOYD:  Correct.

22              THE COURT:  So he could be asking for a pre-

23  motion conference from Judge Vitaliano regarding the

24  allegations in the complaint.

25              MR. HOGAN:  That's right, your Honor.

```
 1                    THE COURT:  And there we go again.

 2               MR. BOYD:  Yes.

 3                    THE COURT:  So I'm just trying to get

 4    definite dates ironed out here.

 5               MR. BOYD:  Okay.

 6                    THE COURT:  I'm going to tell you, if it's

 7    not 60 days, which is what the stipulation -- for

 8    holidays or any other reason, if it's not the 60 days,

 9    you need to consult with Mr. Boyd and come to an

10    agreement and file a joint letter, okay?

11               MR. HOGAN:  Yes, your Honor.

12               MR. BOYD:  We'll do that.

13               THE COURT:  Okay.

14               MR. BOYD:  He won't have any trouble with

15    me.

16                    THE COURT:  I don't think he will and I

17    don't think you'll have trouble with him, either.

18                    Ms. Zwany, at that point, if you file a

19    notice of declination, you're done?

20               MS. ZWANY:  No, your Honor.  The United

21    States is the real party in interest, so the United

22    States is not a party for purposes of discovery but the

23    United States remains a party who would ultimately

24    collect any -- in other words, the plaintiff is not the

25    injured party, it would be the United States, assuming
```

1   that there was proof of that, and the United States

2   would be the party receiving the damages.  So the

3   United States monitors the case, receives all

4   pleadings, is served with all documents, and generally

5   does not participate in the litigation without

6   intervening but does monitor it.

7           THE COURT:  If I recall correctly -- I've

8   only had a handful of False Claims Act cases -- there's

9   a difference in the remuneration scheme if they come in

10   or they don't come in.

11           MS. ZWANY:  Yes, your Honor.

12           THE COURT:  There's a treble damage to the

13   plaintiff?

14           MS. ZWANY:  It's the percentage that the

15   relator receives.  So for example, if we -- the base is

16   about 15% and the max is generally somewhere in the

17   high twenties.  Don't hold me to it.  But in my

18   experience in my cases, where a relator has litigated

19   and succeeded, let's say one received 27%, whereas

20   someone who files a case and the United States bears

21   the brunt of the litigation, it would be probably at

22   15% or perhaps a little more, depending on how much

23   participation, how much assistance they provide.

24           THE COURT:  Is that your experience, Mr.

25   Boyd?

1            MR. BOYD:  That's one of the reasons I like

2      the Eastern District.  AUSA's there think that

3      relator's counsel and relator (ui) 20% if they

4      intervene and settle and over 25% if we try the case.

5      I'm not somebody just talking but if we get past the

6      motions, which we should -- in 20 years, if I haven't

7      learned how to plead, I never will, and we have a

8      client that can give declarations to get past summary

9      judgment, this case is going to trial.  I'm going to

10     make you famous.

11            THE COURT:  Not me, sorry, not me.

12            MR. BOYD:  Yes, ma'am.

13            THE COURT:  No, I just do the legwork here,

14     so thank you.

15            MR. BOYD:  Okay.

16            MR. HOGAN:  And of course, your Honor, from

17     my perspective, we disagree with that entirely.

18            THE COURT:  Thank you, Mr. Hogan, for just

19     noting that in such short shrift, okay?

20            MR. BOYD:  Okay.

21            THE COURT:  So we've gotten the dates

22     scheduled and I am going to enter that the Court held

23     the pre-motion conference, that there is no need for

24     further papers, that I ruled on the record, and the

25     motion is denied for the reasons stated.  I will get a

1   copy of the transcript to be made part of the record

2   without everybody paying for it, even though the court

3   reporters hate me for doing that.

4            MR. BOYD:  Thank you.

5            MR. HOGAN:  Thank you, your Honor.

6            THE COURT:  Since I'm doing it, I will order

7   the transcript.  Then we'll have the dates, October 30th

8   for the amended complaint, December 16th for the status

9   letter from the United States.  And if they decline,

10  I'm saying that Mr. Hogan and Mr. Boyd should agree to

11  the date because your stipulation says 60 days.

12           MR. BOYD:  We will.

13           THE COURT:  Okay.  With that, thank you very

14  much, everybody.  This matter is adjourned.

15           MS. DELISE:  Thank you very much, your

16  Honor.

17           MR. BOYD:  Thank you, your Honor.

18           MR. HOGAN:  Thank you, your Honor.

19                   * * * * * * *

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct

19  transcript from the electronic sound recording of the

20  proceedings in the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                    October 24, 2019