## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES of AMERICA *ex. rel.* PATSY GALLIAN, the STATES of ALABAMA, CALIFORNIA, CONNECTICUT, COLORADO, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, KANSAS, MARYLAND, MICHIGAN, MINNESOTA,MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, and WASHINGTON *ex rel.,* PATSY GALLIAN, the COMMONWEALTHS of MASSACHUSETTS, PENNSYLVANIA, and VIRGINIA *ex rel.,* PATSY GALLIAN and the DISTRICT of COLUMBIA *ex rel.,*   PATSY GALLIAN and PATSY GALLIAN, Individually | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) **SECOND AMENDED COMPLAINT** ) ) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| AMERISOURCEBERGEN CORPORATION, AMERISOURCEBERGEN SPECIALTY GROUP, AND US BIOSERVICES CORPORATION, | ) ) ) ) **CASE NO. 16-CV-2458** ) |
| DEFENDANTS. | ) **(VITALIANO, J)** ) |

### TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT………………………………………………..1

II.     JURISDICTION AND VENUE………………………………………....5

III.    PARTIES………………………………………………………………………6

IV.     CRIMINAL CONDUCT………………………………………………...7

V.      GOVERNING LAWS, REGULATIONS, CODES OF CONDUCT &
        RELEVANT GOVERNMENT AGENCIES………………………………...9

        A.      THE FALSE CLAIMS ACT…………………………………………9

        B.      State Laws………………………………………………………11

        C.      Medicare / Medicaid………………………………………………11

        D.      The Centers for Medicare & Medicaid Services…………………………...19

        E.      Types of Payors…………………………………………………20

                (1) Union Benefit Funds…………………………………………21

                (2) Organizations……………………………………………21

                (3) United States Department of Veterans Affairs…………………………21

                (4) Department of Defense/TRICARE……………………………………21

                (5) Federal Employees Health Benefits Program……………………………22

        F.      The Patient Protection and Affordable Care Act……………………………23

VI.     FACTS AND ALLEGATIONS……………………………………………24

        A.      U.S. Bio's OSRx Software Program (Decimal Point Issue),
                Overcharging, Cancelled Orders and "PPE"……………………………27

        B.      Defendants' Use of Overpay or Credits as Revenue…………………………33

                (1)     USB Spreadsheet Evidence of Overpay or Credits
                        Adjusted into Revenue………………………………………38

**C.**   **Improper Classification as a Long-Term Care Pharmacy**………………..**42**

**D.**   **Cancelled Orders and Improper Restocking**…………………………………**44**

**E.**   **Eligibility Claims**………………………………………………………......**45**

**VII.**   **ALTER EGO**………………………………………………………………**47**

**VIII.**   **FRAUDULENT INDUCEMENT**………………………………………...**47**

**IX.**   **CAUSES OF ACTION**……………………………………………………**48**

**A.**   **First Cause of Action - False Claims Act: Presentation of False Claim by False Certification – 31 U.S.C. §§ 3729(a)(1)(A), 3730.48**………...**48**

**B.**   **Second Cause of Action – False Claims Act: Presentation of False Claims – 31 U.S.C. § 3729(a)(1)(A) by Fraudulent Inducement**……...**50**

**C.**   **Third Cause of Action – False Claims Act: Presentation of False Claims – 31 U.S.C. § 3729(a)(1)(A)**……………………………………**50**

**D.**   **Fourth Cause of Action - False Claims Act: Making or Using a False Record or Statement Material to a False or Fraudulent Claim– 31 U.S.C. § 3729(a)(1)(B))**……………………………………………**51**

**E.**   **Fifth Cause of Action - False Claims Act: Overpayment – 31 U.S.C. § 3729(a)(1)(G)**……………………………………………**52**

**F.**   **Sixth Cause of Action - Alabama False Claims Statutes Policy – Ala. Code 1975 § 22-1-11** *et seq*……………………………………......**53**

**G.**   **Seventh Cause of Action - California False Claims and Reporting Act - Cal. Gov't Code §12650** *et seq*……………………………………**54**

**H.**   **Eighth Cause of Action - Colorado Medicaid False Claims Act – CO ST § 25.5-4-303.5** *et seq*……………………………………………**55**

**I.**   **Ninth Cause of Action - Connecticut False Claims Act - Conn. Gen. Stat §§17b-301a-17b-301p** *et seq*……………………………………**56**

**J.**   **Tenth Cause of Action - Delaware False Claims and Reporting Act – Del Code Ann. tit. 6, §§ 1201** *et seq.*)……………………………………..**57**

**K.**   **Eleventh Cause of Action - District of Columbia False Claims Act – DC Code §§2-381.01** *et seq*……………………………………………..**58**

**SECOND AMENDED COMPLAINT**                                          ii

L.      Twelfth Cause of Action - Florida False Claims Act –
        Fla. Stat. §§ 68.081 *et seq*……………………………………………**59**

M.      Thirteenth Cause of Action - Georgia False Medicaid Claims Act and
        Taxpayer Protection False Claims Act - Ga. Code
        Ann. §§49-4-168 *et seq.* & § 23-3-120 *et seq*……………………………**60**

N.      Fourteenth Cause of Action - Hawaii False Claims Act –
        Haw. Rev. Stat. §§ 661-21 *et seq*……………………………………………**61**

O.      Fifteenth Cause of Action - Illinois False Claims Act - 810 Ill.
        Comp. Stat. § 740 ILCS 175/1. *et seq*………………………………………**62**

P.      Sixteenth Cause of Action - Indiana False Claims and Whistleblower
        Protection Act - Ind. Code § 5-11-5.5 *et seq*……………………………..**63**

Q.      Seventeenth Cause of Action - Iowa False Claims Act - Iowa Code
        § 685.1 *et seq*………………………………………………………………**64**

R.      Eighteenth Cause of Action - Louisiana Medical Assistance Programs
        Integrity Law - La. Stat. Ann. §§ 6:438.1. *et seq*………………………...**65**

S.      Nineteenth Cause of Action - Kansas False Claims Act –
        Kan. Stat. Ann. § 75-7501. *et seq*…………………………………………**66**

T.      Twentieth Cause of Action - Maryland False Health Claims Act –
        Md. Code Ann. Health-Gen §§ 2-601 *et seq*………………………………...**67**

U.      Twenty-First Cause of Action - Massachusetts False Claims Act –
        Mass. Gen. Laws ch. 12 § 5A *et seq*………………………………………**68**

V.      Twenty-Second Cause of Action - Michigan Medicaid False
        Claims Act - Mich. Comp. Laws § 400.601 *et seq*……………………………**69**

W.      Twenty-Third Cause of Action - Minnesota False Claims Act –
        Minn. Stat. § 15C.01 *et seq*……………………………………………..**70**

X.      Twenty-Fourth Cause of Action - Montana False Claims Act –
        Mont. Code Ann. § 17-8-401 *et seq*…………………………………………**71**

Y.      Twenty-Fifth Cause of Action - The Nevada Submission of False
        Claims to State or Local Government Act –
        Nev. Rev. Stat. § §357.010 *et seq*…………………………………………**72**

Z.      Twenty-Sixth Cause of Action - New Hampshire False Claims Act –
        N.H. Rev. Stat. Ann. § 167:61-b *et seq*…………………………………………**73**

**SECOND AMENDED COMPLAINT**                                                    iii

AA.    **Twenty-Seventh Cause of Action - New Jersey False Claims Act –
       N.J. Rev. Stat. § 2A:32C-1** *et seq*……………………………………………………**74**

BB.    **Twenty-Eighth Cause of Action - New Mexico Medicaid False Claims
       Act - N.M. Stat. § 27-14-1** *et seq*……………………………………………………..**75**

CC.    **Twenty-Ninth Cause of Action - New York False Claims Act –
       N.Y. State Fin. Law §§ 187** *et seq*……………………………………………………**76**

DD.    **Thirtieth Cause of Action - North Carolina False Claims Act –
       N.C. Gen. Stat. Ann. §§1-605** *et seq*…………………………………………………**77**

EE.    **Thirty-First Cause of Action - Oklahoma Medicaid False Claims Act –
       Okla. Stat. tit. §63-5053** *et seq*………………………………………………………**78**

FF.    **Thirty-Second Cause of Action - Pennsylvania False Claims Statutes
       Policy - 62 Pa. Cons. Stat. § 1407** *et seq*…………………………………………..**79**

GG.    **Thirty-Third Cause of Action - Rhode Island False Claims Act –
       R.I. Gen. Laws §§9-1.1-1** *et seq*………………………………………………………...**80**

HH.    **Thirty-Fourth Cause of Action - Tennessee Medicaid False Claims Act
       and the Tennessee Medicaid False Claims Act –
       Tenn. Code Ann. §§4-18-101** *et seq***. & §§71-5-181** *et seq*……………………**81**

II.    **Thirty-Fifth Cause of Action - Texas Medicaid Fraud
       Prevention Act. Texas Human Rights Code §§36.001** *et seq*
       **and Gov't Code §§531.101** *et seq*…………………………………………………**82**

JJ.    **Thirty-Sixth Cause of Action - Vermont False Claims Act –
       Vt. Stat. Ann. Tit. H.120 § 630** *et seq*…………………………………………………**83**

KK.    **Thirty-Seventh Cause of Action- Virginia Fraud Against Taxpayers
       Act - Va. Code Ann. § 8.01-216.1** *et seq*……………………………………………**84**

LL.    **Thirty-Eighth Cause of Action - Washington State Medicaid Fraud
       False Claims Act - Wash. Rev. Code § 74.66.005** *et seq*………………………**85**

**JURY DEMAND**………………………………………………………………………………**85**

**PRAYER FOR JUDGMENT**……………………………………………………………………**86**

**SECOND AMENDED COMPLAINT**                                                    iv

## I.      PRELIMINARY STATEMENT

This is a *qui tam* action brought by the Relator Patsy Gallian ("Relator" or "Gallian") in the name of the United States of America ("United States"), the States of Alabama, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Kansas, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, and Washington, the Commonwealths of Massachusetts, Pennsylvania, and Virginia and the District of Columbia, ("the States") (collectively "the Governments"), by and through the Relator, Patsy Gallian to recover treble damages, civil penalties, costs, fees and expenses arising from false or fraudulent claims, material false or fraudulent express or implied statements, records or certifications made or used or caused to be made or used, and knowing concealment and improper avoidance of an obligation to repay overpayments on claims submitted by Defendants AmerisourceBergen Corporation ("ABC"), AmerisourceBergen Specialty Group, LLC ("ABSG") and U.S. Bioservices ("U.S. Bio") (together, "Defendants") to the United States, in violation of the federal False Claims Act, (31 U.S.C. §§ 3729-32) and the following State Statutes (hereinafter referred to collectively as, "State Statutes"): Alabama False Claims Statute Policy (Ala. Code 1975 § 22-1-11), California False Claims and Reporting Act (Cal. Gov't Code §12650 et seq.), Colorado Medicaid False Claims Act (CO ST § 25.5-4-303.5), Connecticut False Claims Act, (Conn. Gen. Stat. §§ 17b-301a-17b-301p), Delaware False Claims and Reporting Act (Del. Code Ann. tit. 6, §§ 1201 *et seq.*), District of Columbia False Claims Act (D.C. Code §§2-381.01 *et seq.*), Florida False Claims Act (Fla. Stat. 68.081), Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. §§49-4-168 *et seq.* & § 23-3-120 *et seq.*), Hawaii False Claims Act (Haw. Rev. Stat. §§ 661-21 *et seq.*), Illinois False Claims Act (810 Ill. Comp. Stat. § 740 ILCS 175/1), Indiana False Claims and

Whistleblower Protection Act (Ind. Code § 5-11-5.5), Iowa False Claims Act (Iowa Code § 685.1), Louisiana Medical Assistance Programs Integrity Law-Claims Review and Administrative (La. Stat. Ann. §§ 6:438.1. *et seq*), Kansas False Claims Act (Kan. Stat. Ann. § 75-7501), Maryland False Health Claims Act (Md. Code Ann. Health-Gen §§ 2-601 *et seq.*), Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 § 5A), Michigan Medicaid False Claim Act (Mich. Comp. Laws § 400.601), Minnesota False Claims Act (Minn. Stat. § 15C.01), Montana False Claims Act (Mont. Code Ann. § 17-8-401), Nevada Submission of False Claims to State or Local Government (Nev. Rev. Stat. § 357.010), New Hampshire False Claims Act (N.H. Rev. Stat. Ann. § 167:61-b), New Jersey False Claims Act (N.J. Rev. Stat. § 2A:32C-1), New Mexico Medicaid False Claims Act (N.M. Stat. § 27-14-1), New York False Claims Act (N.Y. State Fin. Law §§ 187 *et seq.)* North Carolina False Claims Act (N.C. Gen. Stat. Ann. §§1-605 *et seq*.), Oklahoma Medicaid False Claims Act (Okla. Stat. tit. §63-5053), Pennsylvania False Claims Statutes Policy (62 Pa. Cons. Stat. § 1407), Rhode Island False Claims Act (R.I. Gen. Laws §9-1.1-1), Tennessee False Claims Act & Tennessee Medicaid False Claims Act (Tenn. Code Ann. §§4-18-101 *et seq*. & §§ 71-5-181 *et seq.*), Texas Medicaid Fraud Prevention Act. (Texas Human Rights Code §§36.001 *et seq* and Gov't Code §§531.101 *et seq.*), Vermont False Claims Act (Vt. Stat. Ann. Tit. H.120 § 630), Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.1), and the Washington State Medicaid Fraud False Claims Act (Wash. Rev. Code § 74.66.005)..

ABC is a drug wholesale company with its headquarters in Chesterbrook, Pennsylvania and more than 150 offices around the United States and Canada. ABC's website describes the company as operating "the backbone of the healthcare supply chain."[1] ABC obtains payment from the federal Government via Medicaid, Medicare, TRICARE and other Government-related

---

[1] *See* http://www.amerisourcebergen.com/abcnew/about.aspx. Last accessed May 15, 2019.

**SECOND AMENDED COMPLAINT**                                                          2

contracts or programs ("Government Programs") for the specialty pharmacy services it provides to program participants.

ABC conducts its business through its many direct and indirect subsidiaries such as Defendant AmerisourceBergen Specialty Group, LLC ("ABSG"). Defendant U.S. Bio is a subsidiary of ABSG. U.S. Bio is a nationwide full-service provider of specialty pharmacy medications and compliance programs.[2] U.S. Bio has wholly owned pharmacy locations in Alabama, California, Colorado, Kansas, Kentucky, Maryland, North Carolina, Pennsylvania and Texas.[3] Relator estimates, based upon her years of experience at U.S. Bio, that payments from Government Programs comprise about 60-65 per cent of U.S. Bio's revenues..

Starting at least as early as 2009 and continuing to at least as late as 2015, U.S. Bio, under the instructions and with the knowing acquiescence of ABC and ABSG, submitted false and fraudulent information and claims for payment to the Government to justify Defendants receiving funds from the Government Programs to which they were not entitled. Having then, as a result, received substantial overpayments from the Government Programs, Defendants knew that they were obligated to pay/refund the overpayments to the Government. Instead, however, they manipulated U.S. Bio's financial data to hide the overpayments from and credit obligations to the Government. Defendants knowingly concealed internal coding errors and inaccuracies and failed to report and return overpayments to the Government. The deliberate and ongoing pattern of conduct set forth herein and supported by witness testimony and documentation violated the False Claims Act and relevant State qui tam statutes. Furthermore, U.S. Bio's initial and annual false attestations/Certifications of Compliance for the federal programs to which it submitted claims for

---

[2] *See* http://www.usbioservices.com/payers. Last accessed May 15, 2019.
[3] U.S. Bioservices acquires each pharmacy, which then retains its formal company name and does business as ("d/b/a") U.S. Bioservices Corporation. U.S. Bio, by the acts described herein, causes the pharmacies to submit false claims for payment.

**SECOND AMENDED COMPLAINT**                                                      3

payment constituted a fraudulent inducement of the United States. Such fraudulent inducement makes Defendants jointly and severally liable for all claims submitted to and payments made by the United States whether or not the individual claims were false or fraudulent. *See United States ex rel. Feldman v. van Gorp*, 697 F.3d 78, 91 (2d Cir. 2012) ("We see no principled distinction . . . between fraudulently inducing payment initially, thereby requiring all payments produced from that initial fraud to be returned to the government (trebled and with certain fees and costs added as provided by statute), and requiring payments based on false statements to be returned to the government when those false statements were made after an initial contractual relationship based on truthful statements had been established.") (citing *United States ex. rel. Longhi v. United States*, 575 F.3d 458, 473 (5th Cir. 2009); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008); and *United States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003)).In 2009, Relator verbally notified her U.S. Bio supervisor, Koreen Muthiah, that she had discovered several billing problems within U.S. Bio's proprietary OSRx software system. These issues included charging the Government payors **more** than the contracted rates for medications, inappropriately billing with decimal points that would incorrectly increase billable units on claims (*e.g.* 30.0 day supply was interpreted by the Government system as a 300 day supply), cancelling orders without refunding the payor, and not reversing what should have been *temporary* claims entered for the purpose of checking patient eligibility.[4] Despite these processes obviously generating improper results, Ms. Muthiah told Relator that the processes were legal and approved by the ABSG management and legal department. Despite direct notification from Relator, Defendants did not self-report their receipt of overpayments or their credit violations to the Government and continued to

---

[4] Relator informed Stefani Forsythe, U.S. Bio's Vice president of Finance about the eligibility claim issue in 2015.

**SECOND AMENDED COMPLAINT** 4

surreptitiously manipulate overpayments to ultimately and unlawfully include them in corporate revenues; they stole money belonging to Government payors (as well as private payors).

Relator therefore brings this action against ABC, ABSG and U.S. Bio, for their knowing fraudulent course of conduct against the Government.

## II.    JURISDICTION AND VENUE

This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§ 3729-3732 and state *qui tam* laws. This court has jurisdiction over the federal and state law subject matter of this action pursuant to 31 U.S.C. § 3732(a) and (b), and 28 U.S.C. § 1331.

To the best of Relator's knowledge, this suit is not "based upon," within the meaning of the False Claims Act, prior public disclosures of allegations or transactions in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or from the news media.

To the extent, if any, that there has been a public disclosure unknown to Relator Gallian, she is an original source of the information alleged herein as defined by the federal False Claims Act. Relator has direct and independent knowledge of the information on which these allegations are based. Relator has provided to the **Attorney General** of the United States, and the United States Attorneys for the **Eastern Districts of New York** and **Texas** a statement of substantially all material evidence and information in her possession related to her original Complaint and this Amended Complaint in accordance with the provisions of 31 U.S.C. §3730(b)(2), and provided supplemental disclosures of subsequently acquired information. Her disclosure statement and

**SECOND AMENDED COMPLAINT**                                                                 5

supplemental disclosures are supported by clear and competent evidence documenting Relator's first-hand knowledge of Defendants' conduct described herein.

This court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants have, in this District (and many others) made or caused to be made false claims for payment and made, used, or caused to be made or used, false or fraudulent statements or records material to false or fraudulent claims within the meanings of the False Claims Act. Defendants can be found in, are authorized to transact business in, and are now transacting business in this District.

Venue is proper in this District under 31 U.S.C. §3732(a) and 28 U.S.C. §1391 because Defendants transact business within this district.

## III. PARTIES

*Qui Tam* Plaintiff/Relator Patsy Gallian is a citizen of the United States, and a resident of the State of Texas. She brings this action on behalf of the Governments and on her own behalf pursuant to 31 U.S.C. §3730(b)(1) and the state laws enumerated *supra*, at 1-3, as set forth herein.

Defendant AmerisourceBergen Corporation (NYSE: ABC) is a Delaware Corporation with its principal place of business at 1300 Morris Drive, Chesterbrook, PA 19087-5594 and headquarters in Valley Forge, Pennsylvania.

Defendant AmerisourceBergen Specialty Group, LLC is a Delaware entity and a wholly owned Pharmaceutical Distribution subsidiary of AmerisourceBergen Drug Corporation, which is also a significant subsidiary of ABC. ABSG's headquarters are at 1300 Morris Drive, Chesterbrook, PA 19087 and its principal place of business at 5025 Plano Parkway, Carrolton, Texas 75010.

Defendant U.S. Bioservices Corporation is a Delaware corporation, with its headquarters at 1300 Morris Drive, Suite 100, Chesterbrook, PA 19087, a wholly owned subsidiary of ABSG, and a

**SECOND AMENDED COMPLAINT**                                                  6

nationwide specialty pharmacy. Its principal place of business is 5025 Plano Parkway, Carrolton, Texas 75010.

## IV.   CRIMINAL CONDUCT

On or about September 27, 2017, Defendant ABSG entered a Plea Agreement with the U.S. Attorney's Office for the Eastern District of New York and the U.S. Department of Justice through the Consumer Protection Branch (together "United States"), **attached as Exhibit 1 hereto and incorporated herein by reference.** The Plea Agreement was executed by ABSG's counsel pursuant to authority granted by the Boards of Directors of both ABSB and its parent, Defendant AmerisourceBergen Corporation. ABC and ABSG's Board Certifications of consent to the entry of the Plea Agreement and ABC and ABSG's Secretaries' Certifications that the Board Certifications are true, correct and complete resolutions of each entity's respective Board of Directors, comprise **Exhibit A to the Plea Agreement. Exhibit 1-A.**

In the Plea Agreement, ABSG agreed to plead guilty to the single court of the Information filed in this District; to pay a fine of $208,000,000, criminal forfeiture of $52,000,000, and a $125 special assessment. **Exhibit 1 at 1, 4.** Additionally, ABSG "admit[ted], agree[d] and stipulate[d]" that the facts set forth in Exhibit B to the Plea Agreement, **Exhibit 1-B at 1-3**, are true and correct. **Exhibit 1-A at 3.**

ABC's Board of Directors on September 6, 2017 adopted resolutions authorizing and directing ABSG to enter the Plea Agreement, as certified by ABC's Secretary, Hyung J. Bak. **Exhibit 1-A .** ABSG's Board also approved resolutions that "authoriz[ed] and direct[ed] ABSG to enter into the Plea Agreement" and "authorized and directed [ABSG] to plead guilty to the charge specified in the Plea Agreement," as certified by its Secretary, Hyung J. Bak. **Exhibit 1-A.**

**SECOND AMENDED COMPLAINT**                                                                 7

The Statement of Facts, to which ABSG admitted and stipulated, describes a scheme by which, between 2001 and January 2014, two of ABSG's other subsidiaries, under ABSG's instruction and control, removed cancer treatment drugs from glass vials, pooled the drugs, and repackaged them in plastic syringes, in order to increase the number of doses it would sell to patients. This was possible because the vials contain 10-25% and, on information and belief, as much as 50% more than a single dose to ensure that when the product is drawn into a syringe at the time of administration, there will be enough product to fill the syringe. Pooling vial contents, including the overfill, allowed Defendants to fill more dosages than they had purchased, thus selling some to patients at 100 percent profit. This excess product is called "overfill." In conducting this scheme, ABSG, through its subsidiaries, violated the Federal Drug and Cosmetics Act and FDA regulations, and put seriously ill, immunocompromised cancer patients at risk of receiving contaminated medications. Among other practices, ASBG dispensed these drugs in response to order forms that were not prescriptions signed by doctors, assigned to prescriptions random names of persons who were not patients, and prescribed in amounts not plausible or safe. It did not register its pharmacy with the U.S. Food and Drug Administration ("FDA") as required by the federal Food, Drug and Cosmetics Act ("FDCA"). By these acts it introduced or caused the introduction of misbranded drugs into interstate commerce, as the drugs were manufactured, prepared, propagated, compounded or processed in an establishment not registered with the FDA pursuant to 21 U.S.C. 360. Exhibit 1-B at 1-3.

The Information Count to which ASBG agreed to plead guilty, "Introduction of Misbranded Drugs into Interstate Commerce, **Exhibit 2 at 26-27**, alleged that:

> ABSG, together with others, did introduce into interstate commerce, deliver for introduction into interstate commerce and cause the introduction and delivery for introduction into interstate commerce of drugs, including biological products, that were misbranded because they were manufactured, prepared, propagated,

**SECOND AMENDED COMPLAINT**                                                    8

compounded and processed in an establishment in the state of Alabama that was not duly registered with the FDA. (Title 21, United States Code, Sections 33 l(a), 333(a)(l), 352(0) and 360; Title 18, United States Code, Sections 2 and 3551 et seq.)

**Exhibit 2 at 26-27**.

On the same day that ABSG entered its Plea Agreement, September 27, 2017, AmerisourceBergen Corporation ("ABC"), AmerisourceBergen Drug Corporation ("ABDC"), AmerisourceBergen Specialty Group, LLC ("ABSG"), ASD Specialty Healthcare, LLC d/b/a Oncology Supply ("Oncology Supply"), and Medical Initiatives, Inc. ("MII") (together, "ABC Defendants") entered a civil settlement with the United States arising from the same conduct, alleged in three qui tam lawsuits, *United States ex rel. Michael Mullen v. AmerisourceBergen Corporation, et al.*, Civil Action No. CV-10-4856 (E.D.N.Y); *United States ex rel. Omni Healthcare Inc. v. AmerisourceBergen, et al.*, Civil Action No. CV-12- 1178 (E.D.N.Y); *United States ex rel. Daniel Sypula and Kelly Hodge v. AmerisourceBergen Drug Corporation, et al.*, CV-13-10439 (E.D.MI.), transferred and assigned Civil Action No. CV-14-5278 (E.D.N.Y.). **Exhibit 3**. Pursuant to this Settlement Agreement, the ABC Defendants agreed to pay the United States $581,809,006 plus accrued interest, and to pay the Relators' attorneys' fees and costs in settlement of the qui tam actions. **Exhibit 3**.

## V.   GOVERNING LAWS, REGULATIONS, CODES OF CONDUCT & RELEVANT GOVERNMENT AGENCIES

### A.   THE FALSE CLAIMS ACT

Originally enacted in 1863 against the backdrop of massive supplier frauds against the Union Army, the FCA was substantially amended in 1986 by the False Claims Amendments Act.

**SECOND AMENDED COMPLAINT**                                                                 9

The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

The FCA imposes liability upon any person who, among other things, "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions is liable for a civil penalty of up to $22,363.00 for each violation, plus three times the amount of the damages sustained by the Government.

Significantly, the FCA imposes liability broadly, defining "knowing" as not limited to possessing actual knowledge, but also to conduct committed "in reckless disregard of the truth or falsity of the information" or with willful ignorance of the truth or falsity, and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b)(1).

The FCA also broadly defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property

**SECOND AMENDED COMPLAINT**                                                                 10

requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government investigates the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

### B.    State Laws

The State Laws are generally mirror images of the FCA or very similar, although some contain differences, and some address only fraud against the State in connection with the state-run Medicaid programs.

### C.    Medicare / Medicaid

On July 30, 1965, President Lyndon B. Johnson signed into law amendments to the Social Security Act of 1935, which led to the creation of the Medicare and Medicaid programs. The original Medicare program included Part A (Hospital Insurance) and Part B (Medical Insurance). Parts A & B are referred to as "Original Medicare."

The Medicare Prescription Drug Improvement and Modernization Act of 2003 ("MMA"), 42 U.S.C. § 1395w-101 *et seq*. (2004 supplement), 42 C.F.R. § 423.506, provided for private health plans known as Medicare Advantage Plans to be offered as alternatives to Parts A and B, when approved by Medicare. These plans are sometimes called "Part C" or "MA Plans."

The MMA also expanded Medicare to include an optional prescription drug benefit, "Part D," which went into effect in 2006. The Medicare Part D Program provides beneficiaries with assistance in paying for out-patient prescription drugs. The MMA provides that beneficiaries

**SECOND AMENDED COMPLAINT**                                            11

entitled to Medicare benefits under Part A or enrolled in Part B are eligible for Medicare Drug benefits under Part D.

The Defendants participate in the Medicare Part D prescription drug program by providing prescription drug benefits in all fifty (50) states and the District of Columbia. Through their Medicare Part D business, Defendants provide Medicare prescription drug benefits to tens of thousands of beneficiaries.

Medicare Part D provides prescription drugs as an optional benefit to all people with Medicare for an additional charge. This coverage is offered by insurance companies and other private companies approved by Medicare.

Medicare Part D adds prescription drug coverage to Original Medicare, some Medicare Cost Plans, some Medicare Private-Fee-For-Service Plans, and Medicare Medical Savings Account Plans. These plans are offered by insurance companies and other private companies approved by Medicare. Medicare Advantage Plans may also offer prescription drug coverage that follows the same rules as Medicare Prescription Drug Plans.

Medicare Part D is run by the Government, in that the Government pays for or subsidizes payments for prescription drug coverage for eligible Medicare participants. The Government and States often contract with private companies (such as the Defendants) to obtain medications for their citizens through Medicare or Medicaid.

There are strict guidelines and protocols in place to ensure that the Government is charged the proper amounts for the prescription drugs, and that overpayments are reimbursed.

Pharmacies who wish to enroll in **Medicare** must complete **Medicare** Enrollment **Application** — Clinics/Group Practices and Certain Other Suppliers, **Form** CMS-855B. **Form** 855B contains the following **certification**:

**SECOND AMENDED COMPLAINT**                                                                 12

3. I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . . and on the provider's compliance with all applicable conditions of participation in Medicare.

. . .

6. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

The form concludes with a statement that if the signor "become[s] aware that any information in this application is not true, correct or complete, [[s]he] agree[s] to notify the Medicare program contractor of this fact in accordance with the time frames established in 42 C.F.R. § 424.516[(e)2]." Both forms notify applicants of potential criminal and civil penalties for deliberately furnishing false information in the application to gain or maintain enrollment in the Medicare program, including civil penalties under the False Claims Act.

CMS periodically requires applicants to revalidate their enrollments; upon notification by CMS's fee-for-service contractor, the enrollee must submit a revalidation application, resubmitting enrollment information, including these Certification Statements. Alternatively, providers may file the Internet-based Provider Enrollment, Chain and Ownership System (PECOS) at www.cms.gov/MedicareProviderSupEnroll. *See* **Exhibit 6, Medicare Enrollment Application (Form 855B)** containing Certification Statement, at pp. 30-31 (855B).

The Medicare provider either submits its bill directly for payment, or it contracts with an independent billing company to submit a bill to the Medicare claims processor on the provider's behalf. Providers are reimbursed based upon their submission of a single electronic form (in limited circumstances, hard-copy may be submitted), either a CMS-1450 Uniform Institutional Provider Bill for institutional providers billing for Medicare inpatient, outpatient, and home health

**SECOND AMENDED COMPLAINT**                                                      13

services, or a CMS-1500 Health Insurance Claim Form for use by physicians and other suppliers to request payment for medical services. *See* 42 C.F.R. § 432.32 (b). These forms reflect the treatment or services provided and identify the provider or supplier who provided them. Tests, supplies, and services are correlated to a series of unique numbers, called CPT codes, which quickly convey to the carrier what reimbursable expenses the provider has incurred. The forms require the provider to certify that the services above were medically indicated and necessary to the health of the patient. *United States ex rel. Hobbs v. Medquest Assocs.*, 711 F.3d 707, 710-711 (6th Cir. 2013).

The Medicare program relies upon the providers to comply with the Medicare requirements, and trusts the providers to submit truthful and accurate claims. On the claim form, the provider certifies that the claim "is correct and complete," that "certifications and re-certifications, if required by contract or Federal regulations, are on file," and that "[r]ecords adequately disclosing services will be maintained and necessary information will be furnished to government agencies as required by applicable law."

Once the health care provider, like Defendants, submits its CMS-1450 or CMS-1500 form to the Medicare claims processor, payments are typically made by Medicare directly to the provider rather than to the patient. The Medicare beneficiary usually assigns his or her right to Medicare payment to the provider. The United States reimburses Medicare providers with payments from the Medicare Trust Fund, through CMS, as supported by American taxpayers. CMS, in turn, contracts with Medicare Administrative Contractors ("Medicare claims processors," also known as "MACs"), to review, approve, and pay Medicare bills, called "claims," received from health care providers like Defendants. In this capacity, the Medicare claims processors act on behalf of CMS.

**SECOND AMENDED COMPLAINT**                                                    14

All Medicare providers are expected to deal honestly with the Government and with patients. In addition, all Medicare healthcare providers are obligated to comply with applicable statutes, regulations, and guidelines in order to be reimbursed by Medicare. When participating in Medicare, a provider has a duty to be knowledgeable of the statutes, regulations, and guidelines for coverage of Medicare services. 42 U.S.C. §1395y(a)(1)(C). Federal law requires providers like Defendants that receive funds under the Medicare program, to report and return any overpayments within specified time periods. 42 U.S.C. § 1320a-7k(d).

The Medicaid Program, 42 U.S.C. § 1396 *et seq.*, is a government health insurance program funded jointly by the federal and state governments to assist people and families with low income and limited resources. The Centers for Medicare and Medicaid Services (CMS), within the United States Department of Health and Human Services (HHS), administers Medicaid on the federal level. Within broad federal rules, however, each state decides who is eligible for Medicaid, the services covered, payment levels for services, and administrative and operation procedures. The state directly pays the providers of Medicaid services and obtains the federal share of the payment from accounts drawn on funds of the United States Treasury. Providers of prescription drugs for Medicaid patients who participate in the Medicaid program are eligible for reimbursement for covered prescriptions.

The federal government contributes varying costs to Medicaid programs, depending on the state. *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275, 126 S. Ct. 1752, 164 L. Ed. 2d 459 (2006); 42 U.S.C. § 1396, *et seq*. The program is regulated by the Secretary of the United States Department of Health and Human Services, who acts through CMS. *Ahlborn*, 547 U.S. at 275; *United States ex rel. Black v. Health & Hosp. Corp.*, 494 Fed. Appx. 285, 288 (4th Cir. 2012). Though jointly financed and regulated by the federal and state governments, each

**SECOND AMENDED COMPLAINT**                                              15

state bears responsibility for administration of services. *Scherfel v. Genesis Health Ventures, Inc. (In re Genesis Health Ventures, Inc.)*, 112 Fed. Appx. 140, 141 (3d Cir. 2004). Like the way Medicare claims are processed, a state agency enters into agreements with participating health care providers, which submit claim forms to receive compensation. *Scherfel,* 112 Fed. Appx. at 141. Medicaid regulations require parties seeking reimbursement to maintain supporting documentation. A party seeking reimbursement must maintain financial data to support the cost claim. 42 C.F.R. § 413.20(a). That financial data must be based on audit-quality records. 42 C.F.R. § 413.24(a). Moreover, the party seeking reimbursement must certify compliance with these requirements. 42 C.F.R. § 412.24(f)(iv); *see also United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc*., 400 F.3d 428, 447 (6th Cir. 2005) (holding that reimbursement "regulations require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program.").

Defendants made claims for payment that were submitted electronically. All of these claims were submitted to CMS by Defendants under their National Provider Identifier ("NPI") numbers. To become approved for electronic claims submissions, Defendants signed and submitted to CMS an Electronic Data Interchange ("EDI") Enrollment Form, which became effective when it was signed by Defendants' authorized person. The EDI Enrollment form(s) contained a certification that all claims later submitted electronically met all of CMS's requirements. Defendants' monthly electronic batch claims were made using an electronic form, which contains an acknowledgement of the consequences of falsifying or misrepresenting essential information for federal payments, as well as a certification for Medicaid that all the information in the claim is true, and acknowledging the consequences for submitting false claims, statements,

**SECOND AMENDED COMPLAINT**                                                    16

documents, or concealing material facts. All of the periodic submissions for payment to the government by all of the Medicare Defendants were false under the False Claims Act.

If a provider submits false, inaccurate, or incomplete information on its CMS-855B Enrollment Application, or if a provider submits a claim to CMS when it knew or should have known that it was not entitled to receive Medicare payment, it has presented or caused to be presented a false claim or made or used or caused to be made or used a false statement/certification or record as defined by the False Claims Act.

In addition, in submitting a claim for Medicare reimbursement, the provider certifies that the submitted claim is eligible for Medicare reimbursement and that the provider is in compliance with all Medicare requirements.

The Social Security Act at §1862 (a)(22) requires that all claims for Medicare payment must be submitted in an electronic form specified by the Secretary of Health and Human Services, unless an exception described at §1862 (h) applies. In order to submit claims to CMS, or to its Fiscal Intermediary ("FI") contractors, a provider, which includes hospices, must complete an Electronic Data Interchange ("EDI") Enrollment Form and submit it to its designated Medicare Contractor. *Medicare Claims Submission Guidelines*, The EDI Enrollment Form contains the following agreement, which must be signed by an Authorized Individual of the provider:

The provider agrees to the following provisions for submitting Medicare claims electronically to CMS or to CMS's FI's, Carriers, RHHI's, A/B MAC's, or CEDI:

> **The Provider Agrees:**
> * * *
> 12. That it will acknowledge that all claims will be paid from Federal funds, that the submission of such claims is a claim for payment under the Medicare program, *and that anyone who misrepresents or falsifies or causes to be misrepresented or falsified any record or other information relating to that claim that is required pursuant to this Agreement may, upon conviction, may be subject to a fine and/or imprisonment under applicable Federal law.*

**SECOND AMENDED COMPLAINT**                                                          17

EDI Enrollment Form, at 2 (emphasis added). The EDI Enrollment Form further contains the following admonishment:

> **NOTE:** . . . This document shall become effective when signed by the provider. *The responsibilities and obligations contained in this document will remain in effect as long as Medicare claims are submitted to the FI, Carrier, RHHI, A/B MAC, or CEDI, or other contractor if designated by CMS.*

EDI Enrollment Form, at 3 (emphasis added). The EDI Enrollment Form further contains the following:

> **ATTESTATION:** Any provider who submits Medicare claims electronically to CMS or its contractors remains responsible for those claims as those responsibilities are outlined on the EDI Enrollment.

*Id*. The EDI Enrollment Form further contains the following signature provision:

> **SIGNATURE:** I certify that I have been appointed an authorized individual to whom the provider has granted the legal authority to enroll it in the Medicare Program, to make changes and/or updates to the provider's status in the Medicare Program (e.g., new practice locations, change of address, etc.), and to commit the provider to abide by the laws, regulations, and the program instructions of Medicare.

*Id*.

Medicaid and other Government Programs have requirements similar or identical to those of the Medicare Program. To enroll in state Medicaid programs, pharmacies must submit an enrollment **application** that contains, in relevant part, a **certification** that states or is substantially similar to the following, that:

> all of the information provided in this **application** process is true, correct and complete and that the enrolling provider is in compliance with all applicable federal and state laws and regulations.

Once enrolled, each pharmacy must sign a Medicaid Provider Agreement, which provides, in part, that providers will comply with all current and future program policy and billing privisions.

**SECOND AMENDED COMPLAINT**                                                                 18

**D.**     **The Centers for Medicare & Medicaid Services**

The Centers for Medicare & Medicaid Services, ("CMS"), is part of the Department of Health and Human Services (HHS). CMS delineates specific rules and regulations regarding the tracking, reporting and return of credits (overpayments) to the Government. ***On a quarterly basis on form CMS-838, Defendants are obligated to report/disclose Medicare credit balances.*** Specifically, CMS requires the reporting and return of credits regardless of classification or re-classification in the Defendants' records. Upon information and belief, to further their fraud, Defendants did not prepare accurate or complete CMS-838 forms.

In addition, all major medical claims require a CMS Form 1500 to be submitted. Thirty percent **(30%)** of U.S. Bio's Medicare claims are major medical (the remaining **70%** are Pharmacy Benefits Manager (PBM) claims). The CMS Form 1500[5] has the following certification, which requires the signature of a physician, or of a supplier such as the Defendant(s):



The physician or supplier must certify that:

1. The information on the form is true, accurate and complete;

2. The signer has familiarized themselves with all applicable laws, regulations and program instructions, which are available from the Medicare contractor;

---

[5] *See* CMS Form 1500 at https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf. Last accessed May 17, 2019.

3. The signer has provided or will provide sufficient information required to allow the Government to make an informed eligibility and payment decision;

4. The claim complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including but not limited to the Federal anti-kickback statute and Physician Self-Referral law (commonly known as Stark law);

5. The services were medically necessary and personally furnished by the signer; and

6. for each service rendered, the identity (legal name and NPI, license #, or SSN) of the primary individual rendering each service is reported in the designated section.[6]

U.S. Bio made the above certifications to the Government on many thousands of claims without ensuring that all information being supplied was true, accurate and complete. Even after U.S. Bio discovered that the Government had overpaid for incorrect claims, U.S. Bio did not self-report or refund the overpayments. In fact, U.S. Bio and ABSG **concealed** the overpayments in a fund called "payment processing error" or "payor processing error" ("PPE") or, sometimes, "pending recoup." This fund was a *dark hidden pool of money* consisting of overpayment/credits from both Government and commercial payors that was hidden from both internal and external auditors. The overpayments stayed in PPE until they were later moved, on management's orders, to Defendants' revenues. Relator Gallian identified the overpayments, and she reported them and the requirement to return the overpayments to the payors to her supervisor Koreen Muthiah in 2009.

E. **Types of Payors**

Approximately seven thousand (7,000) Medicare Part D and other Government-related payors are regularly billed by Defendants. For example:

---

[6] *Id*. at p. 2.

**SECOND AMENDED COMPLAINT**                                                  20

### (1) Union Benefit Funds

Union Benefit Funds: Within the almost Seven Thousand payors there are Union Benefit Funds. One of the payors is the Health Benefits Fund for the United Healthcare Workers East, 1199 SEIU, which is headquartered at 310 West 43rd Street, New York, NY 10036. The 1199 SEIU has offices at 100 Duffy Ave, Suite 300W, Hicksville, NY 11801.

### (2) Organizations

Organizations such as the AARP have approximately ten (10) different Medicare Part D plans paying into the Defendants' system. Upon information and belief, over seven (7) million AARP members have Health and Drug Insurance that includes Part D coverage.

### (3) United States Department of Veterans Affairs

The Veterans Health Administration ("VA") is America's largest integrated health care system and serves approximately 8.76 million veterans each year.

Upon information and belief, the VA uses Defendants' services to fulfill prescriptions and provide medication to the veterans it serves. Defendants unlawfully withheld payments for the credits due the Government resulting from overpayments made to Defendants on behalf of the veterans serviced by Defendants.

### (4) Department of Defense/TRICARE

Under the Department of Defense ("DoD"), TRICARE is the health care program for active Uniformed Service Members, National Guard/Reserve and retired members of the U.S. Army, U.S. Air Force, U.S. Marine Corp, U.S. Navy, U.S. Coast Guard, commissioned Corps of the U.S. Public Health Service, commissioned Corps of the National Oceanic and Atmospheric Association, and their families/survivors around the world. It serves approximately 9.4 million beneficiaries.

**SECOND AMENDED COMPLAINT**                                                                 21

### (5) Federal Employees Health Benefits Program

Government Employees Health Association ("GEHA") is the second largest national health plan and the second largest dental plan. GEHA covers over one million Federal Employees, Federal retirees and their families. It is part of the Federal Employees Health Benefits Program ("FEHBP").

The Blue Cross and Blue Shield Service Benefit plan, also known as The Federal Employee Program ("FEP") is part of the Federal Employees Health Benefits Program. It covers about 5.3 million Federal employees, Federal retirees and their families.

The payors listed above used Defendants' services to fulfill prescriptions and provide medications to their beneficiaries. For instance, DoD and TRICARE used Defendants' services to fulfill prescriptions for Carticel® (autologous cultured chondrocytes), an autologous cellular product indicated for the repair of symptomatic cartilage defects of the femoral condyle (medial, lateral or trochlea) for the Veterans it serves.

Specifically, regarding Carticel, the usual and customary rate/average wholesale price, was billed out at $70,000.00 per treatment. The contracted rate for the Government payors was $35,000.00. Defendants were billing the Government Payors (*e.g.* the DoD) the regular rate of $70,000.00, resulting in an overpayment of $35,000.00 per treatment. The following is an example of this overcharge:

| VETERANS NAME | VETERANS ID | SERVICE DATE | AMOUNT PAID | INTEREST PAID | INTREST RATE | CPT CODE |
|---|---|---|---|---|---|---|
| ▓▓▓▓▓ D A 073587659 | | 07/11/13 | 73,008.00 | | | J7330 |
| PATIENT CONTROL NUMBER: 410000000202558 | | | | | | |

Defendants knowingly and improperly retained these overpayments, which were due to the

**SECOND AMENDED COMPLAINT**                                              22

Government (as explained in the following Section) for overpayments made to Defendants on behalf of the DoD/ TRICARE members served by Defendants. When Relator discovered the Carticel overcharges, she alerted her supervisor, Koreen Muthiah, in July 2009. Despite Relator's discovery and report of the huge Carticel overpayments, Defendants continued their fraudulent course of conduct and continued to knowingly overbill and withhold refunds of the credits it owed to the Government entities and private payors.

**F.    The Patient Protection and Affordable Care Act**

The Patient Protection and Affordable Care Act ("PPACA") Section 6402, Enhanced Medicare and Medicaid Program Integrity Provisions, amended Part A of Title XI of the Social Security Act (42 U.S.C. § 1301 et seq.) **Section 6402(d) of PPACA** provides:

(d) Reporting and Returning of Overpayments –

> (1) IN GENERAL - If a person has received an overpayment, the person shall –
>
>> (A) **report and return** the overpayment to the Secretary, the State, an intermediary, a carrier, or a contractor, as appropriate, at the correct address; **and**
>>
>> (B) **notify** the Secretary, State, intermediary, carrier, or contractor to whom the overpayment was returned in writing of the reason for the overpayment.
>
> (2) DEADLINE FOR REPORTING AND RETURNING OVERPAYMENTS - An overpayment **must be reported and returned** under paragraph (1) by the **later of** –
>
>> (A) the date which is **60 days after the date** on which the overpayment **was identified**; or
>>
>> (B) the **date any corresponding cost report is due**, if applicable.
>
> (3) "ENFORCEMENT" -**Any overpayment retained** by a person after the deadline for reporting and returning the

**SECOND AMENDED COMPLAINT**                                    23

overpayment under paragraph *(2)* **is an obligation** *(as defined in* **section 3729(b)(3)** *of title 31, United States Code) for* **purposes of section 3729** *of such title*.

(4) DEFINITIONS - In **this subsection**:

(5) **KNOWING AND KNOWINGLY** - The terms 'knowing' and 'knowingly' have the meaning given those in section 3729(b) of title 31, United States Code.

(6) **OVERPAYMENT**-The term 'overpayment' means any funds that a person received or retains under title XVIII or XIX to which the person, after applicable reconciliation is not entitled under such title.

The False Claims Act, 31 U.S.C. §3729(a)(l)(G) provides that any person who - knowingly makes, uses, or causes to be made or used, a false record or statement material to an *obligation* to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or properly to the Government is liable to the Government Entities for a civil penalty. Any person found to have violated these provisions is liable for a civil penalty of up to $22,363.00 for each violation, plus three times the amount of the damages sustained by the Government.

At all times relevant to this Complaint, Medicare constituted a significant source of gross patient revenue for the Defendants. As described below, between at least 2009 and 2015, Defendants significantly over-billed for Medicare, Medicaid and other Government Program reimbursements, concealed the over-billing, and failed to report it to the Government. While the definitive financial documents reside on the Defendants' servers, the total single, cumulative damages would exceed **many millions of dollars, all of which must be trebled under the FCA.**

## VI. FACTS AND ALLEGATIONS

In or around May 2009, Ms. Gallian began her employment with Defendants as a **Reimbursement Manager**. Ms. Gallian's job duties as a Reimbursement Manager included

pharmacy benefit management billing (PBM), commercial billing, collections, posting payments to patient accounts, and customer service. As a result, Ms. Gallian was familiar with the reimbursement policies and procedures used by Defendants. Similarly, Ms. Gallian was familiar with the various contracted billing rate agreements regarding Defendants and the numerous payors billed by Defendants.

In 2013, she was promoted to **Senior Reimbursement Manager**, but her duties were the same as those in her previous position. In her role as a Senior Reimbursement Manager, Ms. Gallian discovered that Defendants knowingly and intentionally presented false or fraudulent claims and **concealed overpayments** from the various Government Agencies, programs and Part D Medicare plans for reimbursement on prescriptions. U.S. Bio concealed the overpayments by hiring one full-time employee,[7] Natiesha Wideman (neè Armstrong), in the Credits/Cash Department to manually adjust overpayments/credits into a *hidden pool of money* called "PPE" ("payor processing error" or "payment processing error") or "Pending Recoup" where they would later be "picked up" and moved into revenue in small increments using a revenue adjustment code.[8] Further, Ms. Wideman was instructed to change payor plans to reflect "Non-Dispensable" to hide the identity of the government payors. The only way to identify the original payor is to look up the patient's name to determine their insurance plan.

Allowing an employee like Ms. Wideman to have rights/credentials within the billing systems that permitted her to post her own adjustments was highly unusual and only done by U.S. Bio to hide the fraudulent activity. Relator understands that industry standards call for a "segregation of duties" in reimbursement departments to prevent exactly such fraudulent activity.

---

[7] U.S. Bio had just hired one additional full-time employee in the Credits/Cash Department when Relator left the company in 2015. The new employee was hired to assist Nateisha Wideman with the adjustments.
[8] General Ledger account number "50410".

**SECOND AMENDED COMPLAINT**                                                                     25

Defendants have violated the FCA by overcharging for medicines, failing to pay and report overpayments and then concealing the credits/overpayments by transferring and maintaining the funds in separate accounts for, often, as much as eighteen (18) months or more. They further advanced the fraud by charging for services or medications **not** provided, using improper decimal points and by improperly billing the Government as a "long-term care pharmacy" (fraudulently inflated prices) rather than as a "retail pharmacy" (proper lower prices). In 2009, Relator informed her supervisor, Koreen Muthiah, of U.S. Bio's practice of holding overpayments as long as eighteen months or more, and later **performing "pick-ups"** where those credits/overpayments were moved into revenue. **Ms. Muthiah** assured Relator that the ABSG management and the legal department had reviewed U.S. Bio's PPE pick-up practices and company officials were confident that they were not breaking any laws. She stated that her former boss at U.S. Bio, Rodney Wright, taught her how to use overpayments as revenue, and that it was okay under the law and regulations.

The method by which Defendants defrauded Government health programs—including Medicare, Medicaid and Medicare Part D, and related insurance entities—was similarly perpetrated by Defendants with respect to billing all payors including, but not limited to, the VA and the DoD /TRICARE systems.

Defendants knowingly and routinely submitted false bills, overbilled, diverted funds and falsely certified compliance with federal guidelines in violation of federal and state laws. As a result of this illegal conduct, Defendants caused many thousands of false claims to be made, likely amounting to many millions of dollars in losses to the Governments. The exact amount of the full and complete damages number is more accurately reflected in the Accounting Department records[9]

---

[9] The Accounting Department uses the BAAN software system.

and Accounts Receivable Department records,[10] maintained by Defendants. Relator worked with many of those records in performing her day to day duties.

**A.     U.S. Bio's OSRx Software Program (Decimal Point Issue), Overcharging, Cancelled Orders and "PPE"**

From approximately 2005 to September 2013, the Defendants used a billing and management software program known as OSRx (a "*home grown*" system, built by U.S. Bio's IT department). Most of the illegal billing violations were accomplished by Defendants using this system.

OSRx allowed Defendants to knowingly and willfully ensure that the Government overpaid substantially for prescriptions. The system also permitted Defendants to conceal Government overpayments, which were never returned or reported, but, instead, were converted by Defendants into revenue.

One method used by Defendants to effectuate their overpayment scheme was to bill in excess of the contracted billing units. The OSRx system used decimal points to establish billable units of medication required by a prescription. For example, a 30-day supply of one pill would be billed as 30.0. However, the Payors' (*e.g.* Medicare, Medicaid, VA, etc.) billing and adjudication systems reflected 300 because their systems did not recognize decimal points. Defendants knew that fact by virtue of the consistently gross overpayments.

As a result, the Government would pay the Defendants for a 300-day supply of medication despite the Defendants only providing a 30-day supply. The Defendants would bill for the 300 pills, not the 30 that were provided. Defendants should have issued the Government a credit for

---

[10] The Accounts Receivable Department used the OSRx software system (and other systems during different years).

**SECOND AMENDED COMPLAINT**                                                   27

the difference in overpayment between a 30-day and 300-day supply, but they did not, nor did they self-report the overpayment.

In October 2009, Relator informed her supervisor, Koreen Muthia, of the decimal point issue in OSRx. Ms. Muthia stated that she would discuss it with U.S. Bio's IT Department. Whether or not Ms. Muthia did so, the issue was never corrected during Relator's employment.

Similarly, Defendants routinely billed for medications for patients who either no longer used the medication or had died. Rather than credit or inform the Government of cancelled order overpayments, Defendants used their OSRx software to conceal the payments in hidden accounts (called "cancel order adjustments").[11] This process was approved by Stefani Forsyth, Vice President of Finance at U.S. Bio. Relator was alerted to this issue in April of 2015 by Miquela Foxworth -a manager who reported to Relator. Relator then informed Paul Fierro, ABC's internal auditor of the *cancelled order overpayments*. Relator was never advised whether Mr. Fierro ever investigated or resolved the issue. Relator was never debriefed on her concerns.

Accordingly, Defendants not only knowingly maintained possession of these illicit gains but created an internal records system to conceal the fraud. Defendants maintained large spreadsheets of prescription invoices and billing information. Many spreadsheets listed patient names, payor names, services, invoice amounts, paid amounts and similar types of information which support Relator's allegations. Others objectively listed the fruits of the crimes—primarily, *credits due, overpayments made, significant aging of overpayments/credits and, on rare occasions,* underpayments. The data was a moving target, because of the ongoing manipulation of the overpayments and moving them to an unaudited, hidden account(s).

If the spreadsheets had been properly maintained, credits due the Government would have

---

[11] *Infra* at p. 43.

**SECOND AMENDED COMPLAINT**                                                                 28

remained listed as credits due to the specific patient and that patient's Government payor until refunded. If the records had not been unlawfully altered to conceal Defendants' obligations, then the amounts of credits due to the Government would have been and would continue to be readily ascertainable.

Instead, Defendants re-coded the credits/monies owed to the Government as **PPE and changed the pay plan name to "Non-Dispensable,"** so that *overpayments did not continue to appear* as credits/refunds owed to the Government. Re-coding the credits as owed to, for instance, an insurance payor named "PPE" ensured that the credits owed to the Government and/or commercial payors would not appear when the spreadsheets were reviewed or when reports were generated by internal and external auditors. Government audits would not have found the overpayments that were knowingly and fraudulently changed from Government pay plans to "Non-Dispensable."

# [CONTINUED ON NEXT PAGE]

**SECOND AMENDED COMPLAINT**                                                                 29

A search for credits due a payor would therefore not return/identify the credits that had been re-coded PPE. When Defendants were subjected to an internal audit, the **re-coding to "payment process error"** ensured that the credits owed to the Government would not appear as credits due the Government and were virtually impossible to identify. Below is a spreadsheet excerpt demonstrating this scheme[12]:

| INVOICE | PAYER_NAME | PLAN_NAME | PAY_PLAN_NNE | DRUG_NAME | Fill Date | Ship Date | PLAN_TYPE | BILLING_TYPE | BALAN. | AR Date | Days Old | Total AR1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 234889 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | GAMMAGARD 20GH200ML VL | 12/18/2013 | 12/21/2013 | OTHER | NonAdjudicated | Credit | 2/11/2014 13:13 | 447.45 | (28,823.26) |
| 235513 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 11/6/2013 | 11/7/2013 | OTHER | NonAdjudicated | Credit | 2/17/2014 15:45 | 447.34 | (19,640.02) |
| 235517 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 12/19/2013 | 12/19/2013 | OTHER | NonAdjudicated | Credit | 2/17/2014 15:46 | 447.34 | (19,640.02) |
| 235518 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 11/21/2013 | 11/21/2013 | OTHER | NonAdjudicated | Credit | 2/17/2014 15:47 | 447.34 | (19,640.02) |
| 235519 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 5GH 100ML | 12/18/2013 | 12/18/2013 | OTHER | NonAdjudicated | Credit | 2/17/2014 15:55 | 447.34 | (1,636.67) |
| 235520 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 12/19/2013 | 1/2/2014 | OTHER | NonAdjudicated | Credit | 2/17/2014 15:55 | 447.34 | (19,929.89) |
| 235526 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 5GH 100ML | 12/31/2013 | 1/3/2014 | OTHER | NonAdjudicated | Credit | 2/11/2014 15:57 | 447.33 | (1,660.82) |
| 235530 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 12/4/2013 | 12/5/2013 | OTHER | NonAdjudicated | Credit | 2/17/2014 16:01 | 447.33 | (19,640.01) |
| 235512 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | GAMMAGARD 10GH 100ML VL | 11/15/2013 | 11/18/2013 | OTHER | NonAdjudicated | Credit | 2/11/2014 9:27 | 444.61 | (2,401.94) |
| 235516 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | GAMMAGARD 30GH 300ML VL | 11/15/2013 | 11/18/2013 | OTHER | NonAdjudicated | Credit | 2/10/2014 9:27 | 444.61 | (14,411.63) |
| 236183 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | HIZENTRA 20% 4GH 20ML VL | 12/19/2013 | 12/19/2013 | OTHER | NonAdjudicated | Credit | 2/10/2014 13:57 | 444.42 | (12,466.48) |
| 236184 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | HIZENTRA 20% 4GH 20ML VL | 11/19/2013 | 11/19/2013 | OTHER | NonAdjudicated | Credit | 2/10/2014 13:57 | 444.42 | (12,466.48) |
| 237011 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | HUMIRA 40H 0.8ML PFS KIT-2 | 12/18/2013 | 12/19/2013 | OTHER | NonAdjudicated | Credit | 2/11/2014 11:35 | 442.63 | (4,775.81) |
| 237672 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | HUMIRA 40H 0.8ML PFS KIT-2 | 1/3/2014 | 1/6/2014 | OTHER | NonAdjudicated | Credit | 2/11/2014 9:16 | 442.61 | (164.75) |
| 237679 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | HUMIRA 40H 0.8ML PFS KIT-2 | 11/18/2013 | 11/20/2013 | OTHER | NonAdjudicated | Credit | 2/12/2014 9:24 | 442.61 | (4,635.34) |
| 237818 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | LUCENTIS 0.5MG/0.05HL VL | 12/11/2013 | 12/16/2013 | OTHER | NonAdjudicated | Credit | 2/12/2014 10:58 | 442.54 | (82.88) |
| 238270 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | FLEBOGAMMA 5% 20GH 400ML | 12/4/2013 | 12/5/2013 | OTHER | NonAdjudicated | Credit | 2/12/2014 14:06 | 442.41 | (3,273.34) |
| 238305 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | ARANESP 60MCG PFS | 10/21/2013 | 10/23/2013 | OTHER | NonAdjudicated | Credit | 2/12/2014 15:20 | 442.36 | (27.78) |
| 239755 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | CARIMUNE NF 6GH VL | 9/10/2013 | 9/10/2013 | OTHER | NonAdjudicated | Credit | 2/14/2014 14:49 | 440.38 | (3,913.20) |
| 239756 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | CARIMUNE NF 6GH VL | 10/31/2013 | 10/31/2013 | OTHER | NonAdjudicated | Credit | 2/14/2014 14:49 | 440.38 | (3,053.06) |
| 239758 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | CARIMUNE NF 12GH VL | 11/19/2013 | 11/19/2013 | OTHER | NonAdjudicated | Credit | 2/14/2014 14:50 | 440.38 | (4,490.10) |
| 244112 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | CARTICEL IMPLANT | 1/2/2013 | 1/2/2013 | OTHER | NonAdjudicated | Credit | 2/21/2014 8:21 | 433.65 | (219.02) |
| 257802 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | GAMMAGARD 20GH 200ML VL | 11/6/2013 | 11/6/2013 | OTHER | NonAdjudicated | Credit | 3/13/2014 11:34 | 413.52 | (14,004.32) |
| 272605 | NON-DISPENSABLE | PAYER PROCESSING ERROR | PAYPROE1 | SYNAGIS 100HGH ML VL | 12/18/2013 | 12/19/2013 | OTHER | NonAdjudicated | Credit | 4/17/2014 15:07 | 388.37 | (4,264.35) |

# [CONTINUED ON NEXT PAGE]

---

[12] Excludes patient information.

**SECOND AMENDED COMPLAINT**                                                       30

An analysis of the complete spreadsheet reflects an "AR Date" between January 27, 2014 and March 19, 2015. The "Non-Dispensable" payors on 519 records shows a sum of $2,118,998 in credit balances. Of these, 501 records have a plan name of "Payer Processing Error" with a total in credit balances of $2,092,343 and fifteen (15) have a plan name "Pending Recoup" with a total in credit balances of $26,644. Below, is another excerpt from a spreadsheet representing the same scheme[13]:

| Invoice | Payer | Plan Name | Rx | Fill Date | Ship Date | Days O | Charge | Payment | Adjustment | Other | Payer Allowed | Balance |
|---------|-------|-----------|-----|-----------|-----------|--------|--------|---------|------------|-------|---------------|---------|
| 239029 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100085762 | 12/4/2013 | 12/5/2013 | 215 | $0.00 | $0.00 | (2,886.00) | $0.00 | $0.00 | ($2,886.00) |
| 236330 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100085880 | 11/1/2013 | 11/4/2013 | 218 | $0.00 | $0.00 | (9,116.90) | $0.00 | $0.00 | ($9,116.90) |
| 296083 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 4100488143 | 9/5/2013 | 9/5/2013 | 119 | $0.00 | $0.00 | (5,326.72) | $0.00 | $0.00 | ($5,326.72) |
| 236221 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100088882 | 9/18/2013 | 9/18/2013 | 218 | $0.00 | $0.00 | (1,133.32) | $0.00 | $0.00 | ($1,133.32) |
| 240900 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089123 | 11/7/2013 | 11/7/2013 | 211 | $0.00 | $0.00 | (2,410.71) | $0.00 | $0.00 | ($2,410.71) |
| 239157 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089123 | 1/3/2014 | 1/6/2014 | 215 | $0.00 | $0.00 | (2,743.32) | $0.00 | $0.00 | ($2,743.32) |
| 236808 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089141 | 11/21/2013 | 11/21/2013 | 217 | $0.00 | $0.00 | (8,710.02) | $0.00 | $0.00 | ($8,710.02) |
| 244621 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100087674 | 11/27/2013 | 12/2/2013 | 207 | $0.00 | $0.00 | (2,004.00) | $0.00 | $0.00 | ($2,004.00) |
| 307598 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6250044078 | 10/21/2013 | 10/22/2013 | 98 | $0.00 | $0.00 | (2,914.60) | $0.00 | $0.00 | ($2,914.60) |
| 225219 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100087873 | 11/8/2013 | 11/11/2013 | 235 | $0.00 | $0.00 | (27,314.63) | $0.00 | $0.00 | ($27,314.63) |
| 239094 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089484 | 12/26/2013 | 12/26/2013 | 215 | $0.00 | $0.00 | (2,858.50) | $0.00 | $0.00 | ($2,858.50) |
| 236294 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089581 | 11/15/2013 | 11/18/2013 | 218 | $0.00 | $0.00 | (9,116.90) | $0.00 | $0.00 | ($9,116.90) |
| 223869 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100089593 | 11/19/2013 | 11/20/2013 | 236 | $0.00 | $0.00 | (13,657.35) | $0.00 | $0.00 | ($13,657.35) |
| 226492 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100088510 | 12/13/2013 | 12/16/2013 | 232 | $0.00 | $0.00 | (2,410.71) | $0.00 | $0.00 | ($2,410.71) |
| 241118 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 6100087485 | 11/27/2013 | 12/2/2013 | 210 | $0.00 | $0.00 | (2,410.71) | $0.00 | $0.00 | ($2,410.71) |
| 237834 | NON-DISPENSABLE | PAYER PROCESSING ERROR | 500885 | 12/11/2013 | 12/12/2013 | 216 | $0.00 | $0.00 | (4,104.75) | $0.00 | $0.00 | ($4,104.75) |

An analysis of this complete spreadsheet found that it includes 451 records with ship dates ranging between September 3, 2013 and May 29, 2014 with the Payer name "Non-Dispensable" and Plan Name "Payer Processing Error" with credit balances totaling $2,710,629. It also includes twelve (12) records with the Plan Name "Pending Recoup" with a total of $32,779 in credit balances.

As a result, on various spreadsheets maintained by Defendants, many of the overpayments (*i.e.* credits/refunds due the Payors) by the Government were not listed as credits due the Government or the Medicare Part D Payors, but were re-coded as PPE in order to hide the monies owed to the Government within the Defendants' software/records.

Relator has Excel spreadsheets reflecting the following representative examples of claims

---

[13] Excludes patient information.

**SECOND AMENDED COMPLAINT**                                                  31

(and many more), which were submitted and paid by the Government and then knowingly moved into PPE by Nateisha Wideman at the instruction of U.S. Bio management (and later moved to company revenue):

| Order No. | Drug Name | Fill Date | Plan Type | AWP[14] | Amt. Charged |
|---|---|---|---|---|---|
| 160016 | GAMMAGARD 10GM/100ML VL | 9/5/2013 | MEDICARE PART D | $ 145.57 | $ 25,645.30 |
| 180474 | GAMMAGARD 10GM/100ML VL | 10/1/2013 | MEDICARE PART D | $ 145.57 | $ 25,645.30 |
| 267563 | XALKORI CAP 250MG | --- | MEDICAID | $ 217.42 | $ 11,523.41 |
| 230181 | NEXAVAR TAB 200MG | 11/1/2013 | MEDICAID | $ 97.91 | $ 10,339.36 |
| 459624 | ERBITUX 2MGML VL 50ML | 9/19/2014 | MEDICARE PART D | $ 623.64 | $ 10,231.60 |
| 185202 | GAMMAGARD 5GM/50ML VL | 10/9/2013 | MEDICARE PART D | $ 145.57 | $ 10,000.00 |
| 185202 | GAMMAGARD 5GM/50ML VL | 10/9/2013 | MEDICARE PART D | $ 145.57 | $ 10,000.00 |
| 185202 | GAMMAGARD 5GM/50ML VL | 10/9/2013 | MEDICARE PART D | $ 145.57 | $ 10,000.00 |

Claims like those above were later moved into revenue by the Credit Department. The following overpayments were adjusted using an "**Adjustment Form**":

| Invoice | Date of Service | Credit Balance ($) | Transfer Balance | Payor Error |
|---|---|---|---|---|
| 724610.01 | 11/23/11 | 32,492.40 | Payor Processing Error | Incorrect Contract Rate (Tricare) |
| 672802.01 | 8/1/2011 | 8,122.73 | Pricing | Dept. of Labor Overpayment |
| 410-830068.01 | 7/19/2012 | 34,766.40 | Pricing | Veterans Affairs |

---

[14] Acquisition Wholesale Price: The contracted rate for the drug.

Below is an example of an Adjustment Form utilized by USB/ASBG, which is the source of Invoice No. 672802.01 summarized above:



This form was used in all the adjustments transferring overpayments to revenues. There will be many tens of thousands of these forms retained in the US Bio financial archives.

Defendants were aware that the Government did not audit the accounts regularly, and, therefore, it was unlikely the fraud would be discovered. Defendants were still engaging in this conduct when Relator's employment ended in June 2015. With her out of the way, the unlawful practice, **so highly profitable**, no doubt continued unless or until government attorneys or agents interviewed Defendants concerning the overpayments.

### B.    Defendants' Use of Overpay or Credits as Revenue

U.S. Bio employees were instructed to let the credits/overpayments "sit" for approximately eighteen (18) months labeled as PPE. In June 2009, during one of their weekly one-on-one meetings, Relator was told by Koreen Muthiah that under the ***Texas Prompt Pay Act***, overpayments by the Government **that were not** ***discovered by the Government*** and for which reimbursement ***was not requested*** within 18 months, were forfeited by the Government and could be kept by Defendants—as if the law meant very little to this scheming group of confiscators.

**SECOND AMENDED COMPLAINT**                                      33

Defendants' stated position was that after the 18-month period the funds were no longer held for the benefit of the payor. If the Government did not discover the credits owed to them within this 18-month timeframe, Defendants would create an "adjustment" within the system to move the overpayment credits from the fraudulent PPE account directly into revenue, all of which was done without any notice to the United States.

Relator expressed her concern about the practice, but Ms. Muthiah assured her that this practice had been cleared by ABSG's management, and was taught to her by her former boss, Rodney Wright. Ms. Muthiah taught this process to the credit application employee, Natiesha Wideman. She explained to Ms. Wideman that she must move overpayments to PPE/Pending Recoup for a minimum of 18 months, and, after 18 months, those overpayments could be moved to revenue as requested by upper management (called a "**pickup**"). When Defendants needed more cash, an e-mail like the one below was sent out by the Director of Reimbursement, Michelle Williams, who requested and caused pick-ups by making and using Adjustment Forms, per Stefani Forsythe's instruction (Ms. Forsythe was and is the Vice President of Finance):

**From:** Williams, Michelle
**Sent:** Thursday, February 26, 2015 1:10 PM
**To:** Gallian, Patsy; Alessio, Jessica
**Subject:** Pickups

Hi Ladies, Stefani is looking for $500,000 in pickups. She doesn't care where it's from so if we have to reach into OSRx we can. Can we find these before tomorrow?

In September 2014, Ms. Wideman went to Relator's office and stated that U.S. Bio needed to give the payors their credit balances back. Relator asked Ms. Wideman to elaborate, and she stated that the money she has been moving should be refunded to payors because they are overpayments. In addition, she stated that numerous payors had been contacting her wanting

**SECOND AMENDED COMPLAINT**                                                                34

refunds, but she was instructed by Stefani Forsythe not to make a refund. In December 2014, Relator asked Ms. Wideman to join Relator to discuss her concerns with the internal auditor Paul Fierro and she did. Thereafter each of them met separately with Chris Zimmerman, Senior Vice President of Corporate Security and Regulatory at ABC, and Paul Ross from Corporate Compliance and Regulatory to explain their concerns with the credit/pickup process.

As a result of Relator's report, Mr. Fierro, an ABSG internal auditor, randomly selected and manually pulled thirty (30) OSRx adjustment files from 2008 to 2013 to conduct an analysis. The findings of his analysis confirmed of Relator's allegations involving overpayment credits from Government Payors being moved into revenue from the PPE account and otherwise.[15] The following is from the "Summary" tab in the spreadsheet created by Mr. Fierro, an ABSG internal auditor:

| | | |
|---|---|---|
| $ | (95,688.23) | OSRx (5) |
| $ | (60,009.30) | PRx (3) |
| $ | (155,697.53) | Total: 8 (of 30) Claims not compliant with associated Contractual Terms of recoup/refund. |
| | | |
| $ | (30,650.00) | OSRx (1) |
| $ | (28,632.40) | OSRx (2) |
| $ | (60,058.34) | PRx (2) |
| $ | (31,268.79) | PRx (1) |
| $ | (150,609.53) | Total: 6 (of 30) Claims in which there were duplicate payments, payer paid twice, or paid in full by 2 separate payers (payments were not returned) |
| | | |
| $ | (58,299.24) | 9 (of 30) Government Payer balances incorrectly taken into revenue (OSRx) |
| | | |
| OTHER: | | |
| $ | (32,492.40) | Overpayment identified and transferred to Payer Processing, then to revenue (Contract does not have specific wording on US Bio in regards to notifications of overpayments/duplicate payments). |
| $ | (7,773.50) | Supporting documentation was not located. |
| $ | (15,788.08) | Revenue was not recognized immediately but placed into Payer Processing Error. |
| Mail Handlers Benefit IgG eMM | | One government payer incorrectly listed as a Non-Government payer. |

---

[15] *See* **Exhibit 4**, IA Spreadsheet for U.S. Bio 3.17.15

**SECOND AMENDED COMPLAINT**                                    35

The screenshot above reflects that 9 out of the 30 files he analyzed showed overpayment by the Government in the amount of $58,299.24. These overpayments were later taken into revenue. It also demonstrates that the system mislabels Government payors as Non-Government/Commercial payors. The example Fierro found was Mail Handlers Benefit, but, according to Relator, many others are improperly identified as well. For instance, the following screenshot of the "OSRx Adjustments" tab in the spreadsheet created by Mr. Fierro states that "Healthnet paid charges in fill at $64,984.80 on 1/10/12," overpayment was then transferred to PPE. According to Relator, Healthnet is a Government/Tricare payor but not recognized as such in this spreadsheet. This error in the system causes external auditors to overlook many Government payor credits because they are knowingly misidentified as Commercial payors in the system.



The screenshot above also details how overpayments were regularly and unlawfully confiscated and, thereafter, moved into revenue from both Government and Commercial payors.

# [CONTINUED ON NEXT PAGE]

The "Delays in applying Adjustments" Tab within the same IA Spreadsheet reflects that

$1,011,274.87 was adjusted into revenue, with the delay ranging from 2 months to 2 years[16]:

| | | | | | |
|---|---|---|---|---|---|
| 2 | NOTE: These adjustments have a lag time between the "date requested" and the "date keyed' into the system for OSRx. | | | | |
| 3 | NOTE2: The request date has been confirmed back to the OSRx Progress Notes screen. | | | | |
| 4 | | | | | |
| 5 | DATE REQUESTED | DATE KEYED | AMOUNT | OSRX ADJ CODE | PAYER ($ amount moved from this payer to revenue) |
| 6 | 7/7/2014 | 9/29/2014 | $ (16,282.85) | CONREV | HORIZON |
| 7 | 7/3/2014 | 9/29/2014 | $ (45,225.49) | CONREV AND BILLREV | AETNA |
| 8 | 7/12/2014 | 9/29/2014 | $ (20,707.80) | CONREV | VARIOUS |
| 9 | 1/14/2014 | 9/29/2014 | $ (45,004.08) | CONREV AND BILLREV | PA BCBS |
| 10 | 7/7/2014 | 9/29/2014 | $ (11,780.61) | CONREV | AETNA |
| 11 | 7/7/2014 | 9/29/2014 | $ (65,535.50) | CONREV AND BILLREV | HORIZON |
| 12 | 7/11/2014 | 9/29/2014 | $ (3,081.46) | CONREV | UHC |
| 13 | 7/11/2014 | 9/29/2014 | $ (11,504.40) | CONREV | UHC |
| 14 | 7/11/2014 | 9/29/2014 | $ (11,622.58) | CONREV | UHC |
| 15 | 7/11/2014 | 9/29/2014 | $ (11,474.18) | CONREV | UHC |
| 16 | 7/11/2014 | 9/29/2014 | $ (19,437.95) | CONREV AND BILLREV | UHC |
| 17 | 7/12/2014 | 9/29/2014 | $ (22,321.11) | CONREV AND BILLREV | VARIOUS |
| 18 | 7/12/2014 | 9/29/2014 | $ (21,357.76) | CONREV | VARIOUS |
| 19 | 7/12/2014 | 9/29/2014 | $ (16,218.06) | CONREV | VARIOUS |
| 20 | 12/10/2013 | 9/29/2014 | $ (41,779.16) | CONREV | PAYER PROCESSING ERROR |
| 21 | 12/11/2013 | 9/29/2014 | $ (29,623.36) | CONREV | PAYER PROCESSING ERROR |
| 22 | 11/20/2013 | 4/30/2014 | $ (71,270.40) | CONREV | DEPARTMENT OF VA |
| 23 | 11/19/2013 | 4/30/2014 | $ (63,326.60) | CONREV | PAYER PROCESSING ERROR |
| 24 | 11/20/2013 | 4/30/2014 | $ (145,834.78) | CONREV AND BILLREV | VARIOUS |
| 25 | 11/20/2013 | 7/31/2014 | $ (92,559.96) | CONREV | PAYER PROCESSING ERROR |
| 26 | 11/20/2013 | 7/31/2014 | $ (64,984.00) | CONREV | PAYER PROCESSING ERROR |
| 27 | 11/20/2013 | 7/31/2014 | $ (78,151.91) | CONREV | PAYER PROCESSING ERROR |
| 28 | 10/19/2011 | 8/29/2013 | $ (8,122.73) | CONREV | US DEPARTMENT OF LABOR |
| 29 | 12/5/2011 | 8/29/2013 | $ (6,130.80) | CONREV | LIBERTY MUTUAL |
| 30 | 10/5/2011 | 8/29/2013 | $ (7,018.36) | CONREV | ACE USA/ESIS |
| 31 | 12/8/2011 | 8/29/2013 | $ (32,422.51) | CONREV | SUMMACARE |
| 32 | 1/25/2011 | 8/29/2013 | $ (48,496.47) | BILLREV | UHC |
| 33 | | | | | |
| 34 | | | | | |
| 35 | | | $ (1,011,274.87) | Dollars delayed in applying adjustment to revenue, with delay ranging from 2 months to 2 years. | |

The internal audit findings confirm Relator's allegations of unlawful credit adjustments to

revenue, the use of the PPE account and the mislabeling of Government payors.[17]

---

[16] *Id.*
[17] *Id.*

Even after the investigation by Fierro was completed, neither Relator nor Wideman were ever advised that any corrective action would be, or had been, taken. Relator continued to observe the continuing credits/overpayments violations; nothing changed, just *"...continue business as normal..."*[18]

Almost every month, Defendants would adjust/convert substantial amounts of overpayments into revenue. This practice likely resulted in many millions of dollars of monetary credits due the Government being improperly held by Defendants and then secretly morphed, over time, into corporate revenues at ABC, as Defendants' financial operations were and are consolidated.

### (1)     USB Spreadsheet Evidence of Overpay or Credits Adjusted into Revenue

In more precise terms, the OSRx Accounts Receivable were carried as positive numbers (or "debits") reflecting the amount billed and still owed by a Payer (a government program such as Medicare, or a private health plan) for products delivered to a covered patient. If an Account Receivable had payments applied exceeding the amounts billed, a negative or "credit" balance will appear. The credit balances carried in the below records (and those reflected on pp. 29-30) remain on the books until they were eliminated through adjustments in the Accounts Payable system.

If it had been determined by USB that a Payer has overpaid on an account and was due a refund, the overpayment should have been refunded by USB and the refund would eliminate the credit. On the other hand, if USB determined that the funds received which generated the credit should be retained, the adjustment posted to "zero out" the credit would recognize the money received as revenue earned. The amount identified as transferred from Accounts Receivable

---

[18] *See* Paul Ross E-Mail dated March 31, 2015, attached hereto as **Exhibit 5**.

Credits to revenue during one single 12-month period (from Feb. 2013 to January 2014) was over $11.8 million.

The Excel file below named "OSRx_ARTrend credits" shows the month end total balances of credits in Accounts Receivable by Payer between the dates of October 31, 2013 and March 31, 2015 in the OSRx platform. The Payer identified in this report as "Processing Error – Recoup" shows a negative balance of $3,779,472 as of October 31, 2013. The negative balance of this Payer varied as high as $4,221,313 as of March 31, 2014 and was negative $1,949,520 as of March 2015. Relator obtained various other similar reports. A portion of this file named above is shown below:

**USB Credit Trend Analysis**

| | 10/31/2013 | 11/30/2013 | 12/31/2013 | 01/31/2014 | 02/28/2014 | 03/31/2014 | 04/30/2014 | 05/31/2014 |
|---|---|---|---|---|---|---|---|---|
| Processing Error - Recoup | ($3,779,472) | ($3,541,792) | ($3,594,324) | ($4,030,678) | ($4,050,805) | ($4,221,313) | ($4,111,429) | ($3,922,285) |
| Out of Network | ($805,048) | ($768,819) | ($789,503) | ($750,592) | ($750,348) | ($752,174) | ($774,608) | ($755,008) |
| BCBS of TX | ($936,277) | ($672,064) | ($739,127) | ($776,185) | ($646,228) | ($677,036) | ($677,036) | ($657,126) |
| Multiplan | ($614,244) | ($597,815) | ($605,446) | ($608,094) | ($598,891) | ($588,011) | ($594,059) | ($587,686) |
| BCBS of NC | ($474,178) | ($350,203) | ($348,055) | ($348,055) | ($348,517) | ($348,387) | ($348,387) | ($349,966) |
| Independence Blue Cross of PA | ($304,663) | ($304,663) | ($304,663) | ($303,666) | ($301,141) | ($300,434) | ($300,434) | ($300,434) |
| CareCentrix | ($368,854) | ($266,429) | ($267,937) | ($274,485) | ($278,975) | ($263,595) | ($263,595) | ($259,912) |
| Highmark Blue Shield of PA | ($943,573) | ($812,437) | ($813,475) | ($313,491) | ($284,074) | ($252,860) | ($252,860) | ($252,860) |
| Anthem BCBS of CO | ($242,206) | ($242,179) | ($253,238) | ($249,249) | ($254,696) | ($221,652) | ($236,377) | ($233,395) |
| United HealthCare | ($371,021) | ($350,016) | ($350,158) | ($350,811) | ($350,811) | ($350,785) | ($350,785) | ($350,785) |

# [CONTINUED ON NEXT PAGE]

The Excel file below named "Invoice AR Collections" includes 4,751 accounts receivable records in the OSRx platform with negative balances dated between April 25, 2006 and February 17, 2015. The total of the negative balances in this report is $8,340,567. Of these records, 285 show the Payer as "Payer Processing Error" with a total negative balance of $1,839,729. Examples of the above entries, in pertinent part, excluding patient identifying information, are shown below:

**A/R Outstanding**

| Payor Name | Group | Invoice Number | Invoice Type | Total Billed | Expected Amount | Total Paid | Invoice Balance | Date of Service | Billed Date |
|---|---|---|---|---|---|---|---|---|---|
| Payer Processing Error | | 175-000000001333.02 | Patient Invoice | 9,022.00 | (2,808.00) | - | (2,808.00) | 11/20/2009 12:00:00 AM | 08/10/2011 |
| SelfPay | | 175-000000001445.02 | Patient Invoice | 27,224.00 | 2,700.00 | 2,220.00 | (150.00) | 11/24/2009 12:00:00 AM | 03/03/2010 |
| Payer Processing Error | | 175-000000002518.03 | Patient Invoice | 1,920.00 | (954.93) | - | (954.93) | 10/4/2009 12:00:00 AM | 06/27/2013 |
| Payer Processing Error | | 175-000000002521.03 | Patient Invoice | 960.00 | (575.14) | - | (575.14) | 11/15/2009 12:00:00 AM | 06/27/2013 |
| IgG Payment Plan | 011525 | 175-000000002840.03 | Patient Invoice | 18,038.00 | 2,650.00 | 1,250.00 | (100.00) | 1/12/2010 12:00:00 AM | 01/16/2013 |
| Payer Processing Error | | 175-000000003401.02 | Patient Invoice | 288.00 | (201.60) | - | (201.60) | 1/31/2010 12:00:00 AM | 08/10/2011 |
| Payer Processing Error | | 175-000000003573.03 | Patient Invoice | 960.00 | (575.14) | - | (575.14) | 2/7/2010 12:00:00 AM | 06/27/2013 |
| Payer Processing Error | | 175-000000003703.02 | Patient Invoice | 624.00 | (96.00) | - | (96.00) | 2/2/2010 12:00:00 AM | 08/10/2011 |
| Payer Processing Error | | 175-000000004335.03 | Patient Invoice | 11,266.00 | (7,567.52) | - | (7,567.52) | 3/11/2010 12:00:00 AM | 08/11/2011 |
| Payer Processing Error | | 175-000000005232.02 | Patient Invoice | 864.00 | (384.00) | - | (384.00) | 3/3/2010 12:00:00 AM | 08/10/2011 |

# [CONTINUED ON NEXT PAGE]

**SECOND AMENDED COMPLAINT**                                                40

The below Excel file named "Adjustments Posted Report %281%29.xls" includes 62,155 adjustments posted to accounts receivable the OSRx platform between the dates of February 1, 2013 and January 31, 2014. This file includes 2,097 entries described in the "Adjustment Type Summary" of the entry as a "Reverse Contractual Allowance", in which a credit balance in an account receivable was reclassified to revenue account 50410, increasing revenue by $8,659,456. This file also contains 9,463 entries described in the Adjustment Type Summary of the entry as "Reverse Billing Error", in which a credit balance in an account receivable was reclassified to revenue account 50005, increasing revenue by $3,145,693. The total of Reverse Contractual Allowance and Reverse Billing Error entries during this time period were $11,805,149. Examples of these types of entries, in pertinent part, excluding patient identifying information, in this Excel file are shown below:

### Adjustments Posted Report

Pharmacy:

| AdjustmentPostedDate | InvoiceNumber | AdjustmentTypeName | AdjustmentGLCode | Created By | TotalAdjustmentAmount |
|---|---|---|---|---|---|
| 01/02/2014 | 410-000000965683.02 | Reverse Contractual Allowance | 50410 | Armstrong,Nateisha | $    (12.95) |
| 01/02/2014 | 625-000000092506.03 | Reverse Billing Error | 50005 | Armstrong,Nateisha | $    (23.31) |
| 01/02/2014 | 410-000000938296.01 | Reverse Billing Error | 50005 | Ricks,Chedrick | $    (63.86) |
| 01/03/2014 | 620-000000097301.01 | Reverse Contractual Allowance | 50410 | Johnson,Kristen | $  (4,359.54) |
| 01/03/2014 | 620-000000100067.01 | Reverse Contractual Allowance | 50410 | Johnson,Kristen | $  (2,596.76) |
| 01/03/2014 | 620-000000100131.01 | Reverse Contractual Allowance | 50410 | Johnson,Kristen | $  (1,273.52) |
| 01/03/2014 | 620-000000098113.01 | Reverse Contractual Allowance | 50410 | Johnson,Kristen | $  (8,698.77) |
| 01/03/2014 | 410-000001004602.02 | Reverse Contractual Allowance | 50410 | Redman,De Ann | $     35.67 |
| 01/06/2014 | 410-000000969825.02 | Reverse Billing Error | 50005 | Jones,Monique | $    (448.21) |
| 01/06/2014 | 620-000000102423.06 | Reverse Billing Error | 50005 | Johnson,Kristen | $    (588.95) |

**SECOND AMENDED COMPLAINT**                                                    41

## C.      Improper Classification as a Long-Term Care Pharmacy

Beginning in or about September 2013, the Defendants began using Script Med software (PRx) instead of OSRx software for their billing. Within the Script Med system, Defendant U.S. Bio was **knowingly and fraudulently coded as a long-term care pharmacy** instead of as a retail pharmacy.

Long-term care pharmacies and retail pharmacies bill for the same or similar types of services. However, long-term care pharmacies can be reimbursed at **materially higher rates** than retail pharmacies for the same type of services. As a result, Defendant U.S. Bio knowingly and improperly billed the Government as a long-term pharmacy for services and products at fraudulently inflated rates. This issue was identified by an employee within Relator's department named Kory Briggs. Realtor instructed Mr. Briggs to analyze one drug (Sterlara) to determine the difference between reimbursement as a long-term care facility and reimbursement as a retail pharmacy. He found that Defendants were **overpaid** by all payors (commercial and Government) approximately **$20 million** on this **one** drug. Relator informed Gail Schindelheim, Director of Regulatory Affairs, of Mr. Briggs's findings in December 2014. She also informed the Defendants' compliance department of the improper classification issue.

Mr. Briggs also created the following timeline for Ms. Schindelheim where he did another sampling and found a $550,000 overpayment amount for the Silverscript plan from CVS Caremark:

December 1ˢᵗ, 2014—Ashley Edison scheduled a conference call with myself, Joy Gilbert, Ceresa Maki, Michelle Williams, and Lori Rodriguez to determine what the default pharmacy service type should be set to in PRx. Joy was unable to join the call and none of the call attendees felt comfortable making a decision without her input.

December 3ʳᵈ, 2014—Ashley Edison sent a follow up email to the group asking for clarification on what the pharmacy service type should default to in PRx. No decision was given via e-mail.

December 3ʳᵈ, 2014—Gail Schindelheim asked me to sample a plan displaying the overpayment issue and determine approximately what our overpayment has been for that plan. Also added that there are more plans that may possibly be overpaying. Pending a report from Mike Hernandez that will be more efficient in identifying plans/payers.

December 4ᵗʰ, 2014—I chose the SilverScript plan to review for overpayments. I ran several reports to obtain the information that I needed. I compared our payments from CVS Caremark to approximately what our reimbursement should have been and provided Gail and Patsy with the dollar amount impact, roughly $550,000.

Later, an analysis was conducted by Mike Hernandez, and he sent the following results in a December 16, 2014 e-mail:

| | CVS CAREMARK | EXPRESS SCRIPTS | Other Payors | Grand Total | % of Total |
|---|---|---|---|---|---|
| COMMERCIAL | $ 2,574,146.54 | $ 5,454,898.44 | $ 15,013,596.01 | $ 23,042,640.99 | 31.6% |
| GOVERNMENT - OTHER | | | $ 117,120.22 | $ 117,120.22 | 0.2% |
| MEDICAID | $ 3,447,314.28 | $ 32,343.45 | $ 6,009,382.56 | $ 9,489,040.29 | 13.0% |
| MEDICARE PART D | $ 5,571,408.24 | $ 9,965,320.57 | $ 24,807,329.26 | $ 40,344,058.07 | 55.3% |
| MEDICARE REPLACEMENT | $ 10,687.00 | | | $ 10,687.00 | 0.01% |
| Grand Total | $ 11,603,556.06 | $ 15,452,562.46 | $ 45,947,428.05 | $ 73,003,546.57 | |
| % of Total | 15.9% | 21.2% | 62.9% | | |

Mr. Hernandez's findings above show that, combined, the Government payors paid Defendants **$49,960,905.58 from August 2013 to December 2014, which was affected by the inflated (Long Term Care) rates. The determination of the amount of fraudulent charges are in data on the Defendants' servers and must await discovery.** To Relator's knowledge, the Government was never notified, nor refunded the money arising from the knowing and fraudulently inflated U. S. Bio billings as a long-term pharmacy.

**SECOND AMENDED COMPLAINT**                                                                43

### D.    Cancelled Orders and Improper Restocking

Occasionally, medication orders from U.S. Bio are cancelled for various reasons (*e.g.* a patient is no longer prescribed the medication, the Rx is the wrong medication, patients die, etc.). When an order is cancelled, U.S. Bio should have reversed the live claim and refunded any payments received. Many payments, however, were not refunded but were simply "*adjusted into revenue*" later. Below is a screenshot from a *Cancelled Orders* Excel spreadsheet for January 2013:

| Transaction Date | Adj Type | Item Name | Invoice Number | Processing Code | Created By | Comment | Adj. Summary | Reimbursement Comments | Adjustment Status |
|---|---|---|---|---|---|---|---|---|---|
| 01/31/2013 | Cancelled Order | XTANDI | 40 410-000000916853.01 | BILLED | Varghese, Samuel | MD D/C meds. | $7,450.00 | adjusted 2/1/13 | COMPLETE |
| 01/31/2013 | Cancelled Order | XTANDI | 40 410-000000916853.02 | PAID | Varghese, Samuel | MD D/C meds. | $7,450.00 | adjusted 2/1/13 | COMPLETE |

This reflects that the **Cancelled** Order was billed and paid on January 31, 2013 and then the amount paid ($7,450.00) was adjusted into revenue on February 1, 2013. This is but one example of numerous, similar adjustments that will be found in the US Bio's financial books and records during discovery.

Furthermore, if the medication that had been ordered and cancelled actually left the U.S. Bio facility, then it was required by law to have been properly disposed of pursuant to the United States Food & Drug Administration's Company Policy Guide.[19] U.S. Bio employees, however, typically ***restocked, unlawfully,*** the returned medications for re-sale, and in addition, in many cases, did not issue a refund to the original payor.

Relator became aware of the *cancelled order scheme* in or around April 2015 when Miquela Foxworth told her about it. She then informed Paul Fierro, ABC's internal auditor, and

---

[19] *See* CPG Sec. 460.300 Return of Unused Prescription Drugs to Pharmacy Stock ("A pharmacist should not return drugs products to his stock once they have been out of his possession. It could be a dangerous practice for pharmacists to accept and return to stock the unused portions of prescriptions that are returned…") **https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-460300-return-unused-prescription-drugs-pharmacy-stock** last accessed May 13, 2019.

**SECOND AMENDED COMPLAINT**                                          44

explained to him that Stefani Forsythe, Vice President of Finance, approved the process. Relator was never advised that the practice was discontinued. Corrupt business continued as usual.

###### E.      Eligibility Claims

During her employment, Relator noticed that U.S. Bio would regularly check a patient's eligibility (called **an "eligibility check"**) for a particular drug to inform them of the **estimated cost**, a process that created an order for purposes of checking the price, which should then be cancelled (1) when the patient placed the order, for which a "live" order was created, or (2) when the patient decided not to purchase the drug. Often, however, when a patient would decline to buy the drug, instead of cancelling the order, U.S. Bio's system would record the "eligibility check" as a live claim. If no one at U.S. Bio went back to reverse the claim, then it would go to the health plan for payment **even though the prescription was never sent**. On rare occasions, an employee of U.S. Bio would reverse a claim if the patient declined to accept it, but that did not happen often. Additionally, sometimes both the eligibility check and the subsequent order would be knowingly billed to the health plan although the prescription was filled only once, **not twice.**

# [CONTINUED ON NEXT PAGE]

**SECOND AMENDED COMPLAINT**                                                45

U.S. Bio's proprietary system, OSRx, was set up in such a way that it could not differentiate between an actual claim and an eligibility check claim. Consequently, when the eligibility claim was not reversed, U.S. Bio received, and kept, the erroneously charged payment. The following reflects an example of this scheme:

> 694958.01
> Posted payment from UAC to adjust RX Solution paid on **eligblity claim rx 333673 dos 12/20/11** previously **contacted insurance 3 times to have claim reversed**. Called again to follow up spoke to Jean said claim is still showing paid that it's **too old to reverse** as claim is over 365 days old i informed her that i first called back in march of 2012 to have the claim reversed. asked if it can be refunded she placed me on hold several minutes to find a refund address then stated she spoke with her supervisor and **i will have to contact my corporate office psoa to have them reverse the claim**. Posting a CONREV adj for $5291.03 reversal request submitted on 3/8/12, 12/3/12, & 1/9/13.

This is an example of a paid eligibility claim in the amount of $5,291.03 that a U.S. Bio employee identified and tried to reverse. This example is unusual because someone actually tried to reverse it, but after so much time had passed, the payor's records could not readily handle such a correction.

Relator had reported this type of violation to Koreen Muthiah in October 2009, and she stated that she would discuss the issue with the IT Department to see if the issue could be corrected, but it never was. Relator learned that it was common for eligibility claims to be paid and not reversed during the time that OSRx was being used (from 2005 to September 2013), and resulted in many millions of dollars in false and/or fraudulent claims submitted to the United States Government.

**SECOND AMENDED COMPLAINT**                                                46

## VII.    ALTER EGO

Pursuant to Delaware law, under which the three Defendants are organized, U.S. Bio is the alter ego of both ABSG and ABC, and both U.S. Bio and ABSG are alter egos of ABC. ABC acknowledges that it operates its pharmaceutical distribution business "through" its subsidiaries. It completely dominates and controls its subsidiaries, both directly and indirectly through another level of subsidiary. ABC owns 100% of both ABSG and U.S. Bio indirectly through another wholly owned subsidiary, AmerisourceBergen Drug Corporation. ABC refers to itself and its subsidiaries, collectively, as "AmerisourceBergen." ABSG required the direction and consent of ABC's Board of Directors, rather than only that of its own Board, to enter its guilty plea in the criminal Plea Agreement with the United States regarding fraudulent and dangerous re-packaging of cancer medications in order to pool "overfill" and increase the number of doses it could sell to providers, who could, in turn, sell them to patients. ABC files consolidated financial information with the SEC and does not provide any separate financial information regarding its subsidiaries. To the contrary, ABC operates with its subsidiaries, and ABSG and U.S. Bio in particular, as a single economic entity. ABC, ABSG and U.S. Bio have interlocking directors and officers, with considerable overlap in the top corporate positions. Since ABSG and U.S. Bio are wholly owned by ABC, the subsidiaries do not issue "dividends" to ABC; instead, it incorporates the revenues/earnings of its subsidiaries into its own revenue and profits for its own shareholders. For these reasons, the layered corporate veils should be pierced, and each Defendant should be held jointly and severally liable for the alleged wrongdoings of its alter egos in this action.

## VIII.   FRAUDULENT INDUCEMENT

Defendants fraudulently induced the Federal and State Governments to accept their Applications to participate as specialty prescription drug providers in Medicare, Medicaid and

**SECOND AMENDED COMPLAINT**                                                    47

other Government Programs by making certifications in the Applications for each program substantially similar to those described in Section V. C. MEDICARE/MEDICAID, that they agreed to abide by applicable Medicare laws, regulations and program instructions; that they understood that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions, and on the supplier's compliance with all applicable conditions of participation in Medicare; that the information provided in the application process was true, correct and complete; that the enrolling provider was in compliance with all applicable federal and state laws and regulations, and that they would comply with all current and future program policy and billing provisions, when Defendants were not in compliance with such laws, regulations and program instructions and did not intend in the future to comply with such current and future laws, regulations and program instructions.

Defendants fraudulently induced the Government to allow them to participate in the Government Programs by knowingly falsely promising in their Medicare Enrollment Applications that: "I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in . . . this application."

Because Defendants fraudulently induced the United States and the States to contract with and make payments to them, all monies paid under their agreements are damages caused by the scheme.

## IX.     CAUSES OF ACTION

### A.     First Cause of Action - False Claims Act: Presentation of False Claim by False Certification – 31 U.S.C. §§ 3729(a)(1)(A), 3730

Relator realleges and incorporates by reference the allegations contained in all paragraph above. This Count is brought by Relator in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendants' violation of 31 U.S.C. §3729.

As a prerequisite to participating in federally funded health-care programs, including Medicare Part D, Defendants expressly and/or impliedly certified their compliance with applicable statues and regulations. Contrary to those certifications, by virtue of the above-described acts, among others, Defendants knowingly defrauded officers, employees or agents of the United States, by purposely withholding monies owed to the United States, knowingly failing to comply with the applicable statutes and regulations, all of which is specifically alleged hereinabove.

By virtue of the above-described acts, Defendants knowingly presented false or fraudulent claims for payment from the United States or other federal payors for products or services not provided, or well in excess of legitimate or contracted amounts for products or services that were actually provided to the patient.

The dollar amounts of the false or fraudulent claims, described herein, knowingly submitted to the United States were likely in the many millions of dollars-- material. Federal health insurance programs, including Medicare Part D, have paid Defendants' false or fraudulent claims which likely amounted to many millions of dollars in excess for drugs that were over-billed and which sums not reported or refunded, after clear identification, in violation of the program requirements as described hereinabove.

The Government, unaware of the fraud perpetrated on them by the Defendants, paid, and may continue to pay, Defendant U.S. Bio, directly or indirectly, for prescription drugs which were never provided or were billed at a fraudulently inflated, improper rate. There is no reason to believe that any of the unlawful conduct described above was self-reported by Defendants or voluntarily discontinued by Defendants after Gallian's reports to management or after she left her employment.

**SECOND AMENDED COMPLAINT**                                                          49

**B.**     **Second Cause of Action - False Claims Act: Presentation of False Claims – 31 U.S.C. § 3729(a)(1)(A) by Fraudulent Inducement**

All the preceding allegations are incorporated herein. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein,

Defendants knowingly, acting with reckless disregard for the truth or falsity of the information, or with deliberate ignorance of the truth or falsity of the information, directly or indirectly fraudulently induced the United States to allow U.S. Bio to participate in its Medicare, Medicaid and other Government Programs, rendering every subsequent claim for payment to U.S. Bio a false claim within the meaning of the False Claims Act under 31 U.S.C. § 3729(a)(1)(A).

As a result, the Government made substantial payments on insurance claims and incurred substantial losses related to U.S. Bio's submission of claims to Medicare, Medicaid, Tricare and/or Medicare Part D or other Government programs, because of Defendants' wrongful conduct detailed above.

Accordingly, the Government has suffered damages of likely many millions of dollars improperly paid by Medicare, Medicaid, Tricare, Medicare Part D and/or other Government Program insurance claims to U.S. Bio, and the Government is entitled, by law, to treble damages as well as a civil penalty for each violation/unlawful submission of false or fraudulent claims under of the FCA.

**C.**     **Third Cause of Action - False Claims Act: Presentation of False Claims – 31 U.S.C. § 3729(a)(1)(A)**

All the preceding allegations are incorporated herein. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein,

Defendants knowingly, acting with reckless disregard for the truth or falsity of the information, or with deliberate ignorance of the truth or falsity of the information, presented and/or

caused to be presented false or fraudulent claims for payment or approval in connection with its overbilling and improper retention of funds in violation of 31 U.S.C. § 3729(a)(1)(A).

As a result, the Government made substantial payments on insurance claims and incurred substantial losses related to U.S. Bio's submission of claims to Medicare, Medicaid, Tricare and/or Medicare Part D or other Government programs, because of Defendants' wrongful conduct detailed above.

Accordingly, the Government has suffered damages of likely many millions of dollars improperly paid by Medicare, Medicaid, Tricare, Medicare Part D and/or other Government Program insurance claims to U.S. Bio, and the Government is entitled, by law, to treble damages as well as a civil penalty for each violation/unlawful submission of false or fraudulent claims under of the FCA.

D. **Fourth Cause of Action - False Claims Act: Making or Using a False Record or Statement Material to a False or Fraudulent Claim– 31 U.S.C. § 3729(a)(1)(B))**

All the preceding allegations are incorporated herein.

As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have knowingly, acting with reckless disregard for the truth or falsity of the information, or with deliberate ignorance of the truth or falsity of the information, made, used, or caused to be made or used, false or fraudulent records or statements in connection with their (1) knowing submission of false or fraudulent claims, and (2) knowing retention of monetary credits/overpayments, which it had an obligation to repay to the Government, in violation of 31 U.S.C. § 3729(a)(1)(B) and legal and regulatory requirements outlined in detail hereinabove.

As a result, the Government made substantial payments on insurance claims and incurred substantial losses related to U.S. Bio's submission of false or fraudulent claims to Medicare,

Medicaid, Medicare Part D, Tricare and/or other Government Programs, because of Defendants' knowing and unlawful wrongful conduct outlined in detail hereinabove.

Accordingly, the Government has suffered damages of likely many millions of dollars from U.S. Bio's false or fraudulent claims submitted to Medicare, Medicaid and Medicare Part D, Tricare and other Government Programs, and the Government is entitled to a civil penalty for **each** such violation of the FCA as required by law.

     **E.**     **Fifth Cause of Action - False Claims Act: Overpayment – 31 U.S.C. § 3729(a)(1)(G)**

All the preceding allegations are incorporated herein.

Defendants have had actual knowledge that significant Government overpayments/credits have occurred as a result of defective pricing over the last decade. Defendants have clearly known of these overpayments for **more than sixty (60) days**. Defendants, upon express Notice from Relator regarding defective pricing, since 2009, have failed to report and return these overpayments as mandated by Section 6402(d) of PPACA since 2010. These failures are a violation of 31 U.S.C. § 3729(a)(1)(G) and further **mandate trebling** the cumulative single damages. Relator estimates without the benefit of the Defendants' financial books and records but based upon her general awareness of the violations over the six years of her employment, that the overpayment violations are likely to amount to many millions of dollars. Those damages must be trebled for the Government's full recovery. In addition, the Government is entitled to a monetary penalty for each false or fraudulent claim submitted and well as for each overpayment which Defendants retained in lieu of refunding the money to which the Government was entitled. The per claim range of penalties will be set by the District Court for a civil penalty **per** false claim, of not less than **$11,181** and not more than **$22,363**, plus treble the government's actual damages. 31

**SECOND AMENDED COMPLAINT**          52

U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5 (2018). A person who violates § 3729 will also be held liable for the government's costs for bringing a civil action to recover any penalty or damages.

**F.      Sixth Cause of Action - Alabama False Claims Statutes Policy - Ala. Code 1975 § 22-1-11 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Alabama under the Alabama False Claims Statutes Policy for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Alabama, by purposely withholding monies owed and by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Alabama has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Ala. Code 1975 § 22-1-11 *et seq.* the State of Alabama is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                      53

G.   **Seventh Cause of Action - California False Claims and Reporting Act - Cal. Gov't Code §12650** *et seq*.

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of California under the California False Claims and Reporting Act for Defendants' violation of that statute.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

Pursuant to Cal. Gov't Code §12651(a) *et seq.*, the State of California is entitled to three times the amount of actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                          54

### H.   Eighth Cause of Action - Colorado Medicaid False Claims Act - CO ST § 25.5-4-303.5 *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Colorado under the Colorado Medicaid False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Colorado has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

Pursuant to CO ST § 25.5-4-303.5 *et seq.*, the State of Colorado is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

I.      **Ninth Cause of Action - Connecticut False Claims Act - Conn. Gen. Stat §§17b-301a-17b-301p** *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Connecticut under the Connecticut False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut State Government for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

Pursuant to Conn. Gen. Stat §§17b-301a-17b-301p *et seq.*, the State of Connecticut is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**J.      Tenth Cause of Action - Delaware False Claims and Reporting Act - Del Code Ann. tit. 6, §§ 1201 *et seq*.)**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Delaware under the Delaware False Claims and Reporting Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Delaware, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Delaware has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Del Code Ann. tit. 6, §§ 1201 *et seq*. the State of Delaware is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                 57

**K.** **Eleventh Cause of Action - District of Columbia False Claims Act - DC Code §§2-381.01 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the District of Columbia under the District of Columbia False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the District of Columbia, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The District, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the District of Columbia has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to DC Code §§2-381.01 *et seq*., the District of Columbia is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**L.      Twelfth Cause of Action - Florida False Claims Act - Fla. Stat. §§ 68.081 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Florida under the Florida False Claims Act and Reporting Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Florida, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Florida has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Fla. Stat. §§ 68.081 *et seq.,* the State of Florida is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**M.      Thirteenth Cause of Action - Georgia False Medicaid Claims Act and Taxpayer Protection False Claims Act - Ga. Code Ann. §§49-4-168 *et seq.* & § 23-3-120 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Georgia under the Georgia Taxpayer Protection False Claims Act and Reporting Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Georgia, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Georgia has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Ga. Code Ann. §§49-4-168 *et seq.* & § 23-3-120 *et seq.,* the State of Georgia is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                           60

**N.      Fourteenth cause of Action - Hawaii False Claims Act - Haw. Rev. Stat. §§ 661-21 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Hawaii under the Hawaii False Claims Act and Reporting Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Hawaii, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Hawaii has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Haw. Rev. Stat. §§ 661-21 *et seq*, the State of Hawaii is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**O.**      **Fifteenth Cause of Action - Illinois False Claims Act - 810 Ill. Comp. Stat. § 740 ILCS 175/1.** *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Illinois under the Illinois False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Illinois, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants

By reason of the Defendants' acts, the State of Illinois has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to 810 Ill. Comp. Stat. § 740 ILCS 175/1 *et seq.*, the State of Illinois is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**      62

**P.     Sixteenth Cause of Action - Indiana False Claims and Whistleblower Protection Act - Ind. Code § 5-11-5.5 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Indiana under the Indiana False Claims and Whistleblower Protection Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Indiana, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Indiana has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Ind. Code § 5-11-5.5, the State of Indiana is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**Q.      Seventeenth Cause of Action - Iowa False Claims Act - Iowa Code § 685.1 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Iowa under the Iowa False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Iowa, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Iowa has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Iowa Code § 685.1 *et seq.*, the State of Iowa is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                 64

### R. Eighteenth Cause of Action - Louisiana Medical Assistance Programs Integrity Law - La. Stat. Ann. §§ 6:438.1. *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Louisiana under the Louisiana Medical Assistance Programs Integrity Law- Claims Review and Administrative for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Louisiana, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Louisiana has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to La. Stat. Ann. §§ 6:438.1. *et seq.*., the State of Louisiana is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**S.      Nineteenth Cause of Action - Kansas False Claims Act - Kan. Stat. Ann. § 75-7501.** *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Kansas under the Kansas False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Kansas, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Kansas has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Kan. Stat. Ann. § 75-7501 *et seq.*, the State of Kansas is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                              66

**T.      Twentieth Cause of Action - Maryland False Health Claims Act - Md. Code Ann. Health-Gen §§ 2-601 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Maryland under the Maryland False Health Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Maryland, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Maryland has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Md. Code Ann. Health-Gen §§ 2-601 *et seq.,* the State of Maryland is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**U.      Twenty-First Cause of Action - Massachusetts False Claims Act - Mass. Gen. Laws ch. 12 § 5A *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the Commonwealth of Massachusetts under the Massachusetts False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the Commonwealth of Massachusetts, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the Commonwealth of Massachusetts has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Mass. Gen. Laws ch. 12 § 5A *et seq*., the Commonwealth of Massachusetts is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**V.     Twenty-Second Cause of Action - Michigan Medicaid False Claim Act - Mich. Comp. Laws § 400.601 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Michigan under the Michigan Medicaid False Claim Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Michigan, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Michigan has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Mich. Comp. Laws § 400.601 *et seq*., the State of Michigan is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                    69

**W.     Twenty-Third Cause of Action - Minnesota False Claims Act - Minn. Stat. § 15C.01 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Minnesota under the Minnesota False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Minnesota, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Minnesota has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Minn. Stat. § 15C.01 *et seq.*, the State of Minnesota is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                    70

### X.     Twenty-Fourth Cause of Action - Montana False Claims Act - Mont. Code Ann. § 17-8-401 *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Montana under the Montana False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Montana, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants .

By reason of the Defendants' acts, the State of Montana has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Mont. Code Ann. § 17-8-401 *et seq.*, the State of Montana is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                                      71

**Y.      Twenty-Fifth Cause of Action - The Nevada Submission of False Claims to State or Local Government Act - Nev. Rev. Stat. § §357.010 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Nevada under the Nevada Submission of False Claims to State or Local Government Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Nevada, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Nevada has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Nev. Rev. Stat. §§ 357.010 *et seq.*, the State of Nevada is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                      72

**Z.      Twenty-Sixth Cause of Action - New Hampshire False Claims Act - N.H. Rev. Stat. Ann. § 167:61-b *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of New Hampshire under the New Hampshire False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of New Hampshire, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of New Hampshire has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to N.H. Rev. Stat. Ann. § 167:61-b *et seq*., the State of New Hampshire is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                          73

**AA.    Twenty-Seventh Cause of Action - New Jersey False Claims Act - N.J. Rev. Stat. § 2A:32C-1 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of New Jersey under the New Jersey False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of New Jersey, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of New Jersey has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to N.J. Rev. Stat. § 2A:32C-1 *et seq*., the State of New Jersey is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**BB.    Twenty-Eighth Cause of Action - New Mexico Medicaid False Claims Act - N.M. Stat. § 27-14-1 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of New Mexico under the New Mexico Medicaid False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of New Mexico, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of New Mexico has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to N.M. Stat. § 27-14-1 *et seq*., the State of New Mexico is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                 75

**CC.    Twenty-Ninth Cause of Action - New York False Claims Act - N.Y. State Fin. Law §§ 187 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of New York under the New York False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of New York, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of New York has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to N.Y. State Fin. Law §§ 187 *et seq.*, the State of New York is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**DD.** **Thirtieth Cause of Action - North Carolina False Claims Act - N.C. Gen. Stat. Ann. §§1-605 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of North Carolina under the North Carolina False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of North Carolina, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of North Carolina has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to N.C. Gen. Stat. Ann. §§1-605 *et seq*., the State of North Carolina is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                     77

**EE.    Thirty-First Cause of Action - Oklahoma Medicaid False Claims Act - Okla. Stat. tit. §63-5053 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Oklahoma under the Oklahoma Medicaid False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Oklahoma, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Oklahoma has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Okla. Stat. tit. §63-5053 *et seq.*, the State of Oklahoma is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                78

**FF.     Thirty-Second Cause of Action - Pennsylvania False Claims Statutes Policy - 62 Pa. Cons. Stat. § 1407 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Pennsylvania under the Pennsylvania False Claims Statutes Policy for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Pennsylvania by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Pennsylvania has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to 62 Pa. Cons. Stat. § 1407 *et seq*., the State of Pennsylvania is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                 79

**GG.    Thirty-Third Cause of Action - Rhode Island False Claims Act - R.I. Gen. Laws §§9-1.1-1 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Rhode Island under the Rhode Island False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Rhode Island, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Rhode Island has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to R.I. Gen. Laws §9-1.1-1 *et seq.*, the State of Rhode Island is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                          80

**HH.**   **Thirty-Fourh cause of Action - Tennessee Medicaid False Claims Act and the Tennessee Medicaid False Claims Act - Tenn. Code Ann. §§4-18-101 *et seq*. & §§71-5-181 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Tennessee under the Tennessee Medicaid False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Tennessee by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Tennessee has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Tenn. Code Ann. 4-18-101 *et seq*., the State of Tennessee is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                                                   81

## II.        Thirty-Fifth Cause of Action - Texas Medicaid Fraud Prevention Act. Texas Human Rights Code §§36.001 *et seq* and Gov't Code §§531.101 *et seq.*

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Texas under the Texas Medicaid Fraud Prevention Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Texas, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Texas has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Texas Human Rights Code §§36.001 *et seq* and Gov't Code §§531.101 *et seq.*, the State of Texas is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**JJ.  Thirty-Sixth Cause of Action - Vermont False Claims Act - Vt. Stat. Ann. Tit. H.120 § 630 *et seq.***

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Vermont under the Vermont False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Vermont, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Vermont has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Vt. Stat. Ann. Tit. H.120 § 630 *et seq.*, the State of Vermont is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**KK.    Thirty-Seventh Cause of Action - Virginia Fraud Against Taxpayers Act - Va. Code Ann. § 8.01-216.1 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Virginia under the Virginia Fraud Against Taxpayers Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Virginia, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Virginia has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Va. Code Ann. § 8.01-216.1 *et seq*., the State of Virginia is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**SECOND AMENDED COMPLAINT**                                                              84

**LL.    Thirty-Eighth Cause of Action - Washington State Medicaid Fraud False Claims Act - Wash. Rev. Code § 74.66.005 *et seq*.**

All of the preceding allegations are incorporated herein.

This Count is brought by Relator in the name of the State of Washington under the Washington State Medicaid Fraud False Claims Act for Defendants' violation of that statute.

By virtue of the acts described above, among others, Defendants knowingly defrauded officers, employees or agents of the State of Washington, by purposely withholding monies owed by presenting or causing to be presented, false or fraudulent claims for payment or approval.

By virtue of the acts described above, Defendants knowingly made, used, created or caused to be made, used or created false records and statements, and omitted material facts, to induce the State to approve and pay such false and fraudulent claims and continues to do so.

The State, unaware of the falsity of the underlying requests for payment and failure to reimburse overpayments, and subsequent statements and claims made, used, presented or caused to be made, used or presented by Defendants paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Defendants as alleged herein. There is no reason to believe that any of the unlawful conduct described above has been discontinued by Defendants.

By reason of the Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in substantial material amounts to be determined at trial.

Pursuant to Wash. Rev. Code § 74.66.005 *et seq*., the State of Washington is entitled to any and all damages, including multiples of actual damages plus the maximum penalty for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims.

**SECOND AMENDED COMPLAINT**                                              85

## PRAYER FOR JUDGMENT

WHEREFORE, Relator requests, on behalf of the United States Government, the States

and herself, against Defendants, and each of them, entry of an order and judgment as follows:

a.  Pursuant to 31 U.S.C. § 3729 ordering Defendants to pay to the United States as damages an amount equal to all monies paid by the United States to U.S. Bio under the agreement(s) to participate in Government Program(s) including but not limited to Medicare, which were fraudulently induced directly or indirectly by Defendants plus the maximum civil penalty for each violation of 31 U.S.C. § 3729, *et seq.;*

b.  OR pursuant to 31 U.S.C. § 3729 ordering Defendants to pay damages in an amount equal to three times the amount of actual damages the United States Government has sustained because of Defendants' violations of 31 U.S.C. § 3729, *et seq.*, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729, *et seq.;*

c.  Relator be awarded a reasonable amount of the Government's recovery as a Relator's Share pursuant to § 3730(d) of the FCA;

d.  Relator be awarded all statutory costs and expenses of this action, including attorney fees as provided by 31 U.S.C. § 3730(d);

e.  The States, respectively, be awarded multiple damages, civil penalties (which may be awarded even in the absence of damages), and that the Relator be awarded her share of the States' recoveries, respectively, as well as statutory attorney's fees, expenses and costs d pursuant to each of the State statutes enumerated herein; and

f.  The United States, the States and Relator be awarded such other and further relief as the Court deems just and proper.

Dated: March 26, 2020

**SECOND AMENDED COMPLAINT**                                                            86

Respectfully submitted,

 /s/ Samuel L. Boyd_____
Samuel L. Boyd
Texas SBN: 02777500
Catherine C. Jobe
Texas SBN: 10668280
BOYD & ASSOCIATES, PC
6440 North Central Expressway, Suite 600
Dallas, Texas 75206-4101
Telephone (214) 696-2300
Facsimile (214) 363-6856
sboyd@boydfirm.com
cjobe@boydfirm.com


 /s/ Richard D. Meadow___
Richard D. Meadow
EDNY Bar Number: RM2621
W. Mark Lanier
Texas SBN: 11934600
Alex J. Brown
Texas SBN: 24026964
Chris Gadoury
Texas SBN: 24034448
**LANIER LAW FIRM**
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
Tel: (800) 723-3216

**Counsel for Relator/Qui Tam Plaintiff**

**SECOND AMENDED COMPLAINT**                                            87

## <u>CERTIFICATE OF SERVICE ON THE UNITED STATES OF AMERICA</u>

The undersigned certifies that the forgoing Amended Complaint was filed in accordance with the Local Rules of the United States District Court for the Eastern District of New York and the Federal Rules of Civil procedure on this 26th day of March 2020.

On March 26, 2020, Relator served a copy of her Proposed Second Amended Complaint to US Attorney Deborah Zwany for the United States District Court for the Eastern District of New York and Sanjay M. Bhambhani, Senior Trial Counsel for the United States Department of Justice, Civil Division.

On October 30, 2019, Relator served a copy of her Supplemental Disclosure Statement and Proposed Amended Complaint to US Attorney Deborah Zwany for the United States District Court for the Eastern District of New York and Sanjay M. Bhambhani, Senior Trial Counsel for the United States Department of Justice, Civil Division.

On November 16, 2018, Relator provided a Supplemental Disclosure Statement to US Attorney Deborah Zwany for the United States District Court for the Eastern District of New York.

On May 16, 2016, a copy of Relator's Disclosure Statement and Original Complaint, filed under seal, was formally served pursuant to FRCP 4(i)(1)(b), via Certified Mail, Return Receipt Requested, upon: Loretta Lynch, Attorney General of the United States, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001.

On May 16, 2016, a copy of Relator's Disclosure Statement and Original Complaint, filed under seal, was formally served on the Department of Justice, the U.S. Attorney's Office and all states subject to the suit.

s/ Samuel L. Boyd
Samuel L. Boyd

**SECOND AMENDED COMPLAINT**                                                                         88